THE STATE *ex rel.* SUPREME LODGE OF THE FRATERNAL
UNION OF AMERICA v. OREAR, *Superintendent of
the Insurance Department of Missouri.*

Division Two, May 17, 1898.

1. **Insurance Companies:** IMPLIED AUTHORITY.   Corporations, in-
cluding fraternal insurance companies, can exercise only such powers
as are expressly or by implication granted to them by statute.

2. ———: ENDOWMENTS: TEST.   An insurance payable at the expiration
of a fixed period is an endowment insurance.

3. ———: ———: FRATERNAL SOCIETY.   A fraternal society that makes
its certificates of insurance payable to the holder when he reaches
seventy years of age, is endowment insurance and can not do
business as a fraternal beneficiary association under the act of March
16, 1897.

4. ———: ———: ———: OTHER PROVISIONS.   A fraternal society that
makes its certificates of insurance payable at death, if the member
dies before he lives out his years of expectancy, or, if he reaches the
limit of his years of expectancy *before* he is seventy years old, issues
him a paid-up certificate making his insurance payable one half when
he is seventy and the rest at his death, or, if he reaches his years of
expectancy *after* he is seventy, makes one half his insurance payable
then and the balance at his death, is not authorized to do business in
this State as a fraternal beneficiary association under the act of March
16, 1897, such certificates being *held* to be insurance on the endowment
plan.

*Mandamus.*

PEREMPTORY WRIT DENIED.

*A. S. Churchill* and *Silver & Brown* for relator.

(1)   A thing which is within the intention of the
makers of the statute is as much within the statute as
if it were within the letter; and a thing which is within
the letter of the statute is not within the statute unless
it be within the intention of the makers.   *State, etc., v.*

*Richardson*, 35 Mo. 388; *State ex rel. v. King*, 44 Mo. 283; *Shultz v. Railroad*, 36 Mo. 27; *Fosburgh v. Rogers*, 114 Mo. 122; *Warren v. Barber P. Co.*, 115 Mo. 572; *St. Louis v. Lane*, 110 Mo. 254. What is fairly implied is included in the act. *Thomas v. Railroad*, 101 U. S. 82; *Reddick v. Walsh*, 15 Mo. 519; *State v. McLain*, 49 Mo. App. 398. (2) We are to look, *first*, to the words of the grant to ascertain what powers and rights are expressly conferred; *second*, what powers are necessarily implied and tacitly annexed to those specifically conferred, having reference to the objects to be obtained by the grant. *Mintin v. La Rue*, 64 U. S. 435; *People v. Ins. Co.*, 15 Johns. (N. Y.) 384; 4 Am. and Eng. Ency. of Law, 216; *Railroad v. Steamboat Co.*, 107 U. S. 100; *Att'y-General v. Railroad*, 5 App. 473; *Davis v. Railroad*, 131 Mass. 258; *Wendell v. State*, 62 Wis. 304; *Barbaro v. Occidental Grove*, 4 Mo. App. 429. (3) Plaintiff simply agrees to pay a specified sum when a member attains seventy years of age, or when by disease or accident he is prevented from following any occupation, or upon his death. In other words the plaintiff recognized the fact that physical disability must come to a member by age alone, though exempted from disease and accident and that uncertainty might exist as to its actual presence unless a specific time was fixed when it should be deemed to be present; has declared that the arrival at the age of seventy shall be deemed a physical disability. *Friends v. Fairman*, 62 How. Pr. (N. Y.) 386.

*Edward C. Crow*, Attorney-General, and *Sam. B. Jeffries*, Assistant Attorney-General, for respondent.

(1) While fraternal beneficiary associations are authorized to make provisions for the payment of benefits in case of death, accident and physical disability, yet

the payment thereof must be provided for in such manner as meets the approval of the fundamental principles of the association, and the right to issue policies or make contracts in contravention to these principles, is not an implied power. Rutherfords' Statutes, p. 421. Any reference to implied powers must not only be given such construction as is reasonable, but must also be such as will fairly give effect to the intent of the act. *Fosburgh v. Rodgers*, 114 Mo. *loc. cit.* 134. The authority cited by plaintiff on the question of the right of corporations to act upon implied right is not questioned by us, but on the other hand we ask that the same be considered by the court in giving the acts of 1897 a proper construction, believing that our contention in the matter is correct and that the issuance of the paid-up endowment certificates or limited payment certificates are neither expressly granted nor impliedly authorized. The implied authority naturally and legally following from the act is to do and transact its business in the ordinary and customary way of such companies, at the same time keeping in view the real object and purposes for which the organization was perfected. (2) Plaintiff denies that it is asked authority to issue paid endowment certificates of insurance. By section 81 it is provided that when a member has paid all assessments up to the date of the expiration of his expectancy, and he be yet under the age of seventy years, the Supreme Lodge shall issue to him a paid-up certificate providing for the payment to him of a specific sum at the time he shall have reached the age of seventy years; and there shall, in all cases when a member reaches his expectancy, be issued a paid-up policy payable at the death of the member. The member is subject to no other demand or assessment on such insurance from and after the expiration of his expectancy. This we submit

is endowment insurance, and such that does not carry with it the real object and purpose of the association. The fraternal and benevolent feature whereby the members are joined, is, after the age of expectancy, of no consequence in the transaction. The member is relieved of all further liability to the Supreme Lodge from whence the policy of insurance is issued, and there exists a pecuniary demand or obligation due to the member and existing against the association regardless of their principles of benevolence, fraternity and philanthropy or all the real fundamental principles upon which the association is based. Endowment insurance is in general a contract to pay the insured a specific sum of money at the termination of a certain designated period, if he is then living, or to a person named if the insured dies before the specified time. Joyce on Ins., sec. 10; *State ex rel. v. Inv. Co.*, 48 Minn. 110. It is, therefore, evident that said policy, when so issued, is an endowment certificate. In Cooke, Insurance, section 107, it is said: ''Sometimes the contract to pay on the death of the insured is conjoined with a contract to pay on the expiration of a fixed period, should he live so long. Such a contract is called a contract of endowment insurance, though so far as concerns the contract to pay on the expiration of a fixed period, it is not, strictly speaking, a contract of life insurance.''

BURGESS, J.—The relator is a corporation duly incorporated under the laws of the State of Colorado. It was organized and incorporated in 1894. In 1896 it amended its articles of incorporation, and the objects of the incorporation as set forth in its amended articles of incorporation are as follows:

''*Section Four*. The objects for which said association is formed are to promote social and fraternal intercourse among ourselves and our associates; to bestow

substantial benefits upon its members, and widows, children, relatives, affiances and dependents of deceased members; to foster the social relations of its members and their families; to encourage education, and comfort the sick by fraternal ministrations in times of sorrow and distress; to hold and convey such real estate and other property and funds as may be necessary to conduct the affairs of the association; to levy and collect assessments, dues and *per capita* tax as may be necessary to carry out the objects of the association; to authorize and establish lodges and prescribe the ritual, or secret work, laws and rules to govern the same within the territory of the United States and Canada.

"*Section Six.* Said association shall have power to make and adopt a constitution, by-laws, rules and regulations for the admission, suspension, expulsion of members and government of this association and all subordinate lodges; for the collection of assessments, fees and dues, and shall prescribe the number and duties of all officers and members. Shall prescribe the manner of safely keeping and paying out all moneys, and may alter, modify or change the constitution, by-laws, rules and regulations, or these articles of incorporation at will."

By section one of the articles of incorporation it is provided: "The corporate name of this association shall be: 'The Supreme Lodge of the Fraternal Union of America.'"

On or about March 1, 1896, this corporation commenced to do business in the State of Missouri, and continued to do business therein by organizing subordinate lodges, and issuing to the beneficiary members of such subordinate lodges benefit certificates under the provisions of its constitution and by-laws adopted under the foregoing articles of incorporation. These

Vol. 144 mo—11

provisions are set out in full in the petition for the writ and in the alternate writ. This society continued to transact its business in the State of Missouri until the passage and approval of the act of 1897, and now has in the State seven subordinate lodges, with about three hundred and fifty members. On or about the first of November, 1897, the association made application to the Superintendent of the Insurance Department of Missouri for a license or certificate authorizing it to do business in the State, and on or about the first of December, 1897, the Insurance Commissioner finally refused to issue such certificate for the following · grounds of objection:

*First.* Because the said association, by virtue of its by-laws, issues, paid-up endowment certificates of insurance to its members as beneficiaries, and which as a fraternal beneficiary association it can not legally do under the laws of this State.

*Second.* Because the plaintiff by its by-laws provides for the payment of insurance to its members, as beneficiaries, in cases other than those of temporary or permanent physical disability, either as the result of disease, accident or old age.

*Third.* Because the said plaintiff issues policies or certificates of insurance in which the number of premiums or assessments are limited to a fixed period of years, and it issues paid-up endowment certificates payable to a member when he arrives at a certain age, and such payment is made to such beneficiary member whether or not he be temporarily or permanently disabled, either as the result of disease, accident or old age.

*Fourth.* Because by the by-laws of plaintiff association it is provided that the liability of its members for the payment of any one death claim is limited to one assessment upon each member, and which said assessment is limited to a certain amount specfied in the

contract and certificate of insurance, and which it could not legally do under and by virtue of the laws of this State governing fraternal beneficiary associations.

*Fifth.* Because by virtue of its corporate authority under and according to the laws of the State of Colorado, to which it owes its parentage, no authority is vested in plaintiff to issue limited payment or paid-up certificates of insurance, and no authority to issue certificates of insurance whereby any person shall be made a beneficiary except the widows, orphans, heirs and devisees of deceased members, and having no authority to issue said certificates of insurance by virtue of its corporate capacity under the laws of the State in which it was incorporated, it could have no authority to issue such certificates in this State.

*Sixth.* Because plaintiff is not a fraternal association with a representative form of government.

*Seventh.* Because plaintiff issues certificates of insurance payable to relatives of members as beneficiaries without regard to their being "blood relatives," as required by act of 1897.

On the —— day of ——, 1898, the relator filed before Division number two of the Supreme Court of the State of Missouri an application for a writ of *mandamus* against the Superintendent of the Insurance Department, asking that he be required to issue a certificate of authority authorizing the said Fraternal Union of America to do and transact its business in the State of Missouri under and by virtue of the provisions of the act of the Legislature of the State of Missouri, approved March 16, 1897, entitled "Fraternal Beneficiary Associations."

Sections 1, 2, 3 and 6 are as follows:

"*Section 1.* A fraternal beneficiary association is hereby declared to be a corporation, society or voluntary association, formed or organized and carried on for the

sole benefit of its members and their beneficiaries, and not for profit. Each association shall have a lodge system, with ritualistic form of work and representative form of government, and shall make provision for the payment of benefits in case of death, and may make provision for the payment of benefits in case of sickness, temporary or permanent physicial disability, either as the result of disease, accident or old age, provided the period in life at which payment of physical disability benefits on account of old age commences, shall not be under seventy (70) years, subject to their compliance with its constitution and laws. The fund from which the payment of such benefits shall be made, and the fund from which the expenses of such association shall be defrayed shall be derived from assessments or dues collected from its members. Payments of death benefits shall be to the families, heirs, blood relatives, affianced husband or affianced wife of, or to persons dependent upon the member. Such associations shall be governed by this act and shall be exempt from the provisions of the insurance laws of this State, and shall not pay a corporation or other tax, and no law hereafter passed shall apply to them unless they be expressly designated therein. And such fraternal beneficial association may create, maintain, disburse and apply a reserve or emergency fund in accordance with its constitution or by-laws.

"*Sec. 2.* All such associations coming within the description as set forth in section 1 of this act, organized under the laws of this or any other State, province or territory, and now doing business in this State, may continue such business, provided that they hereafter comply with the provisions of this act regulating annual reports and the designation of the Superintendent of the Insurance Department as the person upon whom process may be served, as hereinafter provided.

"*Sec. 3.* Any such association coming within the description as set forth in section 1 of this act, organized under the laws of any other State, province or territory and not now doing business in this State, shall be admitted to do business within this State when it shall have filed with the Superintendent of the Insurance Department a duly certified copy of its charter and articles of association, and a copy of its constitution or laws, certified to by its secretary or corresponding officer, together with an appointment of the Superintendent of the Insurance Department of this State as a person upon whom process shall be served as hereinafter provided; and provided, that such association shall be shown to be authorized to do business in the State, province or territory in which it is incorporated or organized, in case the laws of such State, province or territory shall provide for such authorization; and in case the laws of such State, province or territory do not provide for any formal authorization to do business on the part of any such association, then such association shall be shown to be conducting its business within the provisions of this act, for which purpose the Superintendent of the Insurance Department of this State may personally, or by some person to be designated by him, examine into the condition, affairs, character and business methods, accounts, books and investments of such association at its home office, which examination shall be at the expense of such association, and shall be made within thirty days after demand therefor, and the expense of such examination shall be limited to $50.

"*Sec. 6.* The Superintendent of the Insurance Department of this State shall, upon the application of any association having the right to do business within this State, as provided by this act, issue to such association a permit, in writing, authorizing such association to do business within this State, for which certificate

and all proceedings in connection therewith such association shall pay to said Superintendent of the Insurance Department the fee of $5."

Sections 77 and 81, of the constitution of the relator, are as follows:

"*Sec. 77.* Every member shall, when he takes the degree of fraternity, and receives his benefit certificate, pay to the secretary of his lodge, in addition to one month's *per capita* tax, local lodge dues, one assessment according to his age when applying for membership as per the following rates, which shall determine the rate to be fixed in said certificate, by the supreme secretary . . . . . . . $3,600 certificates will not be issued until after January 1, 1889, and then only at the discretion of the advisory board. The rate of assessment of each member shall be fixed at his nearest birthday, except as provided in section 78.

"*Sec. 81.* A member who shall live out his expectancy of life at the time of the issuance of his certificate, at the expiration of said expectancy (the date of which expiration shall be stated in the certificate), shall be paid one half of the face of his certificate in cash, less the amounts on account of accident or total disability claims previously paid him, the same to be paid out of the maturity fund, and for the balance of the certificate (50 per cent, or less should the benefits paid him for accident and disability benefits exceed fifty per cent on the face of his certificate) there shall be issued a paid-up certificate payable on the death of the member; provided that no such payment shall be made to said member until he shall have attained the age of seventy years, and if he shall have lived out his expectancy of life before he has reached seventy years of age said Supreme Lodge shall issue to him a paid-up certificate providing for the payment to him at the time he shall reach the age of seventy years as per terms

specified in this section.   The rate of assessment on paid-up certificates for one half of the original face of the certificate shall be one half of the original rate of assessment which, together with the *per capita* tax, shall be paid out of the maturity fund.   On other paid-up certificates the rate of assessments shall be the same as the original rate."

It is argued by respondent that no provision for the payment of benefits of insurance can be made except in case of death, sickness, temporary or permanent physical disability, either as the result of disease, accident or old age; and that the payment of death benefits can only be made to the families, heirs, *blood* relatives, affianced husband or affianced wife of, or to persons dependent upon the member, and no person other than those belonging to that class shall or can rightfully be designated as beneficaries in the certificate of insurance to be paid upon the death of the member.

Upon the other hand it is contended by relator that as the statute of Missouri does not forbid the issuing of certificates in the manner authorized by sections 77 and 81, of its constitution, that the authority to do so must be implied.

The statute provides that such fraternal beneficiary associations "shall make provision for the payment of benefits in case of death," and "may make provision for the payment of benefits in case of sickness, temporary or permanent physical disability, either as a result of disease, accident or old age," but it is not to be presumed therefrom even if such presumption could be indulged under any circumstances, that the purpose of this statute was to fix seventy years as the age when physical disability from old age alone would be presumed.   While the act should be given the meaning intended for it by the legislature, it would require a strained construction to justify a

ruling in accordance with relator's contention. Under relator's constitution the question of disability from old age seems to be of no consequence, as the time fixed for the payment of the policy is arbitrarily fixed with reference to the age of the assured, and comes clearly within the definition of endowment insurance. *State ex rel. v. The Federal Inv. Co.*, 48 Minn. 110. In *Walker v. Com'r of Ins.*, 103 Mich. 344, the relator applied for *mandamus* to compel respondent to receive and file the reports of a fraternal beneficiary association, and to issue the statutory certificate authorizing it to do business. Section 5 of article 1 of the constitution of the association provided: "The supreme directory shall have the power, through its board of managers, to issue endowment for life certificates of not exceeding $250 each, payable in one hundred months, or upon total disability or death; or, when there shall be a sufficient sum in the maturity fund, the lowest serial member of the endowment certificates may be retired under the direction of the board of managers in accordance with the terms of the certificate." The court said: "The act under which the association was incorporated, it will be noticed, provides only for payment in case of death, or for payments in case a member is disabled by sickness or other disability; while the constitution of this association not only provides for payment in case of death and disability, but also endowments payable at the end of one hundred months. It is too well settled to need the citation of authority that corporations can exercise only such powers as are expressly or by implication granted to them." Citing Bac. Ben. Soc. and Life Ins., sec. 47; Ang. and A. Corp., sec. 256. The writ was denied. In Cooke, Life Insurance, section 107, it is said: "Sometimes the contract to pay on the death of the insured is conjoined with a contract to pay on the expiration of a

fixed period, should he live so long.   Such a contract is called a contract of endowment insurance, though, so far as concerns the contract to pay on the expiration of a fixed period, it is not, strictly speaking, a contract of life insurance at all." See, also, *Levy v. Van Hagen*, 69 Ala. 17.   Treating of the same subject Joyce in his work on Insurance, section 2518, says: "If the act under which a beneficiary association is incorporated provides only for payment in case of death, or for payments in case a member is disabled by sickness or other disability, such society is not authorized to conduct an insurance payable at the expiration of a fixed period, that being an endowment insurance."

In the case at bar the relator under its constitution has the power to issue life certificates payable at the age of seventy of the holder of such certificate and being payable on the expiration of a fixed period is clearly endowment insurance, and not within the provisions of the act of 1897.

From what has been said it logically follows that the association has no right to have the certificate to do such business as it claims, and that it was rightfully refused by the respondent.   There are other questions raised by council for the respective parties in their briefs, but the conclusion reached renders it unnecessary to pass upon them.   The writ must be denied. GANTT, P. J., and SHERWOOD, J., concur.