## Yeomen of America v. William T. Rott.
## Same v. Sherman Rott, By, et al.

(Decided November 29, 1911.)

### Appeals from Jefferson Circuit Court.
### (Common Pleas, Second Division.)

1. Insurance—Fraternal Society—By-laws—Admissibility of Application for Insurance.—A fraternal society which is under the supervision of a supreme council and secures members through the lodge system exclusively and pays no commissions, nor 'employs any agents except in the organization and supervision of the work of the local council is exempt from the operation of section 679, Kentucky Statutes, requiring the application, constitution, by-laws, &c., of the society to be contained in or attached to the contract of insurance, before they can be received in evidence, and the fact that the organizer or officers of the local council issued certificates of membership without initiating the applicant, or were guilty of other irregularities in the organization of the council, in violation of the by-laws and rules of the company, did not have the effect of changing the character of the company, and of making it any the less a fraternal society within the meaning of the statute.

2. Same—Application—Answers to Questions.—The applicant for membership in a fraternal society may contract that his answers shall be true to the best of his knowledge and belief, and in such a case the law will not add anything further to his undertaking.

3. Verdict—Sufficiency of Evidence.—In an action on a certificate of membership in a fraternal society where the company sought to

defeat a recovery on the ground of false and fraudulent answers in the application, evidence examined and held sufficient to take the case to the jury and to sustain a verdict in favor of plaintiff.

CHATTERSON & BLITZ for appellant.

FLEXNER, CAMPBELL & GORDON for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming both on the Original and Cross Appeals.

These two actions were consolidated and heard together below, and will be disposed of in one opinion.

The actions are based upon two certificates of membership issued by the Yeomen of America upon the life of Sallie E. Rott: One on August 29th, 1908, and the other on September 2nd, 1908. The first certificate was for $1,000.00, and the beneficiary was Sallie E. Rott's minor son, Sherman Rott. The second certificate was for $2,000.00, and William T. Rott, another son of Sallie E. Rott, was the beneficiary. Sallie E. Rott died on September 22nd, 1908. The company interposed two defenses: First, that the applicant had made false and fraudulent representations in the written application for the certificate and in the medical examiner's report; second, that under the by-laws and printed rules of the company, plaintiffs, even if entitled to recover at all, could recover only a sum much less than that set out in the face of the certificates. After the institution of the action Sherman Rott died, and the action was revived in the name of E. O. Yaeger, his administrator.

Upon the completion of the evidence, the trial court instructed the jury as follows:

"1.   The law of this case is for the plaintiffs, and you will find for the plaintiff, William T. Rott, against the defendant, The Yeomen of America, in the sum of $1,380.03 with interest thereon at the rate of six per cent per annum from March 18, 1909, and you will find for the plaintiff, E. O. Yaeger, administrator of Sherman Rott, the sum of $689.57, with interest thereon at the rate of six per cent per annum from the 16th day of March, 1909, unless you find for the defendant under the instructions hereinafter given you.

"2.   In making the application for membership in the defendant society and upon which application the benefit certificates sued on were issued, the following

questions were asked of and answered by the applicant, Sallie E. Rott, to-wit: 'Present health?' She answered 'Good.' To the question: 'Note each illness or injury for which a physician has been consulted since childhood?' she answered 'None lately' and 'none', respectively. To the question: 'Is your menstruation regular and normal?' she answered 'Yes.' To the question: 'Have you passed change of life?' she answered 'No.' To the question: 'Have you any disease of the womb, ovaries or breast?' she answered 'No.' To the question: 'If any of your relatives ever had consumption, cancer, Bright's disease, apoplexy or insanity, state which and when?' she answered 'None whatever.'

"Now, if you believe from the evidence that all or any one of said answers were substantially untrue to the best of the knowledge and belief of the applicant, Sallie E. Rott, and if you further believe from the evidence that according to the course of business usually followed by benefit societies similar to the defendant and engaged in insuring the lives of its members, the defendant, acting reasonably and naturally would not have accepted such application nor have issued the benefit certificates sued on if the truth to the best of the knowledge and belief of the applicant, Sallie E. Rott, had been stated in the application, then you will find for the defendant as to both of the certificates sued on.

"3. By the answer to the first question above quoted, to-wit: as to her 'present health', she answered 'good.' By 'good health' it is not to be understood that she meant to or did represent that she was entirely free from infirmity, but that she was in reasonably good state of health and that her life was such as might be insured with ordinary safety upon common terms, and if you believe from the evidence that Sallie E. Rott, at the time said applications were made, was in such health and strength as to justify the reasonable belief that she was free from symptoms calculated to cause a reasonable apprehension of any derangement of the organic functions and to ordinary observation and outward appearance her health was reasonably such that with ordinary safety her life might be insured upon ordinary terms, the requirement of 'good health' is satisfied.

"4. If you find for plaintiffs, you will state separately in your verdict the amount found in favor of each plaintiff, to-wit: In favor of William T. Rott, $1,380.03,

and in favor of E. O. Yaeger, administrator of Sherman Rott, $689.57.

"If you find for the defendant, you will say so by your verdict and no more."

The jury found for the plaintiffs in each case, and upon the judgment predicated thereon the company appeals, and plaintiffs prosecute cross appeals.

The only ground for reversal urged on the cross appeal, is that the trial court erred in admitting as evidence the application, medical examiner's report, and the by-laws and rules of the company, none of which documents were attached to or made part of the certificates. It is conceded that the amounts fixed in the instructions of the court are correct, provided the by-laws and rules of the company were properly submitted as evidence.

Section 679 of the Kentucky Statutes is as follows:

"All policies or certificates hereafter issued to persons within the Commonwealth by corporations transacting business therein under this law, which policies or certificates contain any reference to the application of the insured, or the constitution, by-laws, or other rules of the corporation, either as forming part of the policy or contract between the parties thereto or having any bearing on said contract, shall contain or have attached to said policy or certificate a correct copy of the application as signed by the applicant, and the portion of the constitution, by-laws or other rules referred to; and unless so attached and accompanying the policy, no such application, constitution, by-laws or other rules shall be received as evidence in any controversy between the parties to or interested in said policy or certificate, and shall not be considered a part of the policy or of the contract between such parties. The said policy or certificate, application, constitution, by-laws or other rules shall be plainly printed, and no portion thereof shall be in type smaller than brevier: Provided, however, that nothing in this section shall be construed as applying to health certificates or constitutional receipts, or other evidences used in reinstatements of a policy or certificate. But the provisions of this section and this subdivision shall not apply to secret or fraternal societies, lodges or councils, which are under the supervision of a grand or supreme body, and secure members through the lodge system exclusively, and pay no commission nor employ any agents, except in

the organization and supervision of the work of local subordinate lodges or councils."

The question is, whether or not appellant comes within the exception mentioned at the end of the foregoing section of the statutes. Counsel for appellees contend that this question was decided adversely to the ruling of the court below in the case of Supreme Commandery of the United Order of the Golden Cross of the World v. Hughes, 114 Ky., 175. Counsel overlook the fact that the Hughes case was decided in 1902 upon the statutes then in force. After that case was decided the General Assembly, by Act of March 24, 1906, amended section 664, of the Kentucky Statutes, which defines assessment or co-operative insurance, and also section 679, of the Kentucky Statutes, requiring the policy or certificate to contain a copy of the medical examination, application, etc., by providing that neither of said sections should apply to secret or fraternal socities, lodges or councils, which are under the supervision of a grand or supreme body. The evidence in this case leaves no doubt that appellant is a fraternal society within the meaning of the exemption contained in section 679. It was incorporated and authorized to do business under and by virtue of an act of the General Assembly of the State of Illinois, entitled "An Act to provide for the organization and management of fraternal, beneficiary societies for the purpose of furnishing life indemnity or pecuniary benefits to beneficiaries of deceased members," etc. It is controlled by a national council, operates and secures members through the lodge system exclusively, and pays no commission nor employs any agents except in the organization and supervision of the work of local, subordinate lodges or councils. While there is evidence to the effect that the officers and organizers of the local council in Louisville, through whom decedent obtained her certificate, issued certificates without initiating the applicants, and were guilty of certain other irregularities in the organization of the council, such acts on their part, committed in violation of the by-laws and rules of the company, did not have the effect of changing the character of the company and of making it any the less a fraternal society within the meaning of the statute. We, therefore, conclude that the application, examiner's report, and by-laws and rules of the company were properly admitted as evidence.

Counsel for the company insist that the court erred

in its instructions in requiring the answers designated therein to be substantially untrue "to the best of the knowledge and belief of the applicant." In this connection it is insisted that, under the rule laid down in this State, the inquiry is confined to whether or not the answers are substantially untrue. Whatever may be the general rule upon this subject, it is certain that there is nothing therein to prevent the applicant from contracting otherwise; and if the applicant undertakes to answer only to the best of his knowledge and belief, the law will not add anything further to his undertaking.

On the first page of the applications in question the following provision is found:

"I further certify that the answers made by me to the questions propounded by the medical examiner, and also answers made to all other questions herein appearing, are each and every one of them true to the best of my knowledge and belief; and I agree that any concealment of facts or any untrue or fraudulent statement made by me shall forfeit my rights to all the benefits of the order, and to membership therein."

On the second page of the application we find the following:

"I hereby agree that any answers or statements in the following application, known to me to be untrue, incomplete or misleading, shall render my policy null and void."

At the bottom of the same page is the following language:

"I hereby warrant the truth to the best of my knowledge and belief, of all the answers given to the above questions, and hereby affix my signature this —— day of ——."

In each of the paragraphs quoted it will be observed that the good faith of the applicant is an essential element and that in no instance does the applicant warrant the truth of any statements further than to the best of her knowledge and belief. This being true, the question to be determined by the jury was, not whether the answers were substantially untrue in point of fact, but whether they were substantially untrue to the best of the knowledge and belief of the applicant. It follows, therefore, that the instructions on this score are free from criticism.

The evidence for appellant shows that the decedent was examined on September 14, 1908. At that time she

had cancer of the uterus, which was visible to the eye, and was about as large as a small door knob. This condition had existed anywhere from two or three months to a year or more. When she appeared for examination before Dr. Ritter, she had symptoms of blood poisoning. She stated to the examining physician that she had a watery discharge from her womb, and this had existed for two or three months. This discharge produced an offensive odor. On September 15th, she was examined by Dr. Irvin Abel, who corroborates Dr. Ritter as to her condition. Mrs. Simon testified that she saw decedent during April, May and June, of 1908, and she complained of not feeling well; said she thought she had some female trouble. Mrs. Rose Sandidge, a sister of the decedent, testified that in June, July and August the decedent complained of pains in her stomach, and frequently remarked that she felt very bad.

The evidence for appellees is to the effect that during the summer preceding the applications in question, decedent's health was good and she was able to perform her usual household duties. There was nothing to indicate that she had cancer of the womb aside from the pains which she felt at times, and these may have been due to other causes and may have been of a temporary character. There is frequently an offensive discharge from the womb even when there is no diseased condition. Two or three physicians—one who called to treat applicant for a bad cold, and the other when she got a nail in her foot—testified that, while applicant was not a robust woman, she was in ordinarily good health. She was accustomed to doing ordinary housework, and would sometimes wash the clothes when the washerwoman failed to appear. She frequently hoed in the garden and gathered vegetables. The only complaint she made was that she sometimes felt tired because of the work she had done.

Upon this evidence we can not say, as a matter of law, that the applicant must have known that she had cancer of the womb. The fact that she occasionally complained of feeling bad, or that there was an offensive discharge from the womb, which might have been due to other causes, can not be said to be sufficient to put her on notice of the fact that her womb was actually diseased. Indeed, it is not seriously contended by counsel for appellant that the applicant actually knew she had a disease of the womb. As has been frequently

pointed out, the term "good health" is relative. It is not every indisposition, such as an occasional headache, or pains in the stomach or abdomen, or a discharge from the womb, that will justify a woman in saying that she is not in good health. All these things may exist, and yet the general health of the applicant be good. The question in these cases was for the jury, and, being unable to say that their finding was flagrantly against the evidence, the judgment will not be disturbed.

Judgments affirmed both on the original and cross appeals.