## LAURA A. UMBERGER, Respondent, v. MODERN BROTHERHOOD OF AMERICA, Appellant.

### Kansas City Court of Appeals, March 4, 1912.

1. **INSURANCE: Fraternal-Beneficial Societies: Foreign Companies: Statutory Restrictions.** Where a foreign fraternal-beneficial society, doing business in this state under authority of Secs. 7111-7112, R. S. 1909, includes in its insurance contract a class of beneficiaries not permitted to domestic societies of the same nature, such foreign society is not "within the description" of such domestic societies as defined by Sec. 7109, R. S. 1909, and is not entitled to the privilege granted domestic companies of maintaining the defense of suicide or fraudulent misrepresentations in an action on its insurance certificate issued in this state.

2. ———: ———: ———: **Endowment: Suicide.** When a foreign fraternal-beneficial society doing business in this state, includes in its policy an endowment at and after the policy-holder becomes seventy years of age, payable to him, it is not a fraternal policy and the society is not entitled to the benefit of the defense of suicide except as that defense might be made by a general life insurance company.

3. ———: ———: ———: **Place of Contract.** Where the assured lived in the state of Kansas, but joined a lodge in Missouri of a fraternal benefit society of Iowa, doing business in Missouri, and through such lodge took a benefit insurance certificate from such society, making his application therefor and paying his assessments and his per capita tax in Missouri, being subject to expulsion in Missouri, and the certificate to be delivered to him in Missouri when he is initiated, and his death to be reported by the Missouri lodge; it was *held*, that the final act making a binding contract took place in Missouri, and that it was a Missouri contract.

Appeal from Jackson Circuit Court.—*Hon. Jas. E. Goodrich*, Judge.

AFFIRMED.

*Conkling Rea & Sparrow* for appellant.

*W. H. Vernon, Sr., W. H. Vernon, Jr.,* and *Harkless, Crysler & Histed* for respondent.

ELLISON, J.—Plaintiff is the widow of Stephen L. Umberger, deceased, and brought this action on a benefit certificate of life insurance for two thousand dollars. Defendant is a fraternal benefit society organized, chartered and resident in the state of Iowa. It was authorized to do business in Missouri and Kansas and some other states. Its organization embraced local or subordinate lodges in the territory where it did business. It had a local lodge in Kansas City, Missouri. Umberger lived and died a resident of Pawnee county, Kansas, a distance of near three hundred miles from Missouri. While a resident there he applied for membership to the local lodge at Kansas City, Missouri, and for the certificate of insurance in controversy on the 28th of February, 1898. The certificate was issued to him in a few days thereafter, payable to his wife, or in case of her death, "to his legal representatives," and contained a clause stating that defendant should not be liable if death was caused by suicide, sane or insane. He died at his home in Kansas on the 30th of December, 1908. Proofs of death were made and defendant refusing to pay, the widow instituted this action, in Kansas City, Mo., as stated. Defendant's refusal to pay is based on the claim that deceased committed suicide. A right to make that defense depends upon whether defendant was authorized to issue and did issue such a fraternal benefit certificate to deceased as is allowed by our statute.

By the statute of this state (Sec. 7109, R. S. 1909) domestic fraternal beneficiary associations must make provision for the payment of death benefits which "shall be to the families, heirs, blood relatives, affianced husband or affianced wife of, or to person dependent upon the member." The statute grants to such associations highly important and valuable privileges not allowed to general life insurance companies. Among these are exemptions from taxation and the

right and privilege to defend claims where the assured committed suicide, or where he made false representations.

By the terms of sections 7111 and 7112 of the statute, such foreign associations as come "within the description as set forth in section 7109," above mentioned, may likewise do business in this state, with the same privileges the domestic association enjoys.

The statute of Iowa requires that fraternal associations organized in that state shall issue certificates of insurance payable to the "husband, wife, relative, legal representative, heir or legatee," of the member; thus including two classes of beneficiaries (legal representatives and legatees) not named in our statute. Plaintiff therefore insists that the defendant association does not "come within the description" of a domestic association as required by our statute. And she further insists that the certificate in controversy, being payable to deceased's legal representatives in case of his wife's death, shows on its face that it does not come within such description, and that therefore defendant's contract with the deceased is not a fraternal benefit contract and defendant is not entitled to defend on the ground of suicide. We think the point well taken.

In discussing this question it seems to us that one material consideration is overlooked by defendant. Such associations are benevolent institutions and have for their professed primary object the social and moral benefit of the membership and for that reason they take the form of an organized brotherhood, the insurance feature being merely an incident. [State ex rel. v. Vandiver, 213 Mo. 187.] It is manifest that notwithstanding the insurance feature, they do not represent trade or commerce. They are essentially *benevolent;* and on *that account,* they have been granted certain extraordinary privileges,—privileges only found extended to organizations of a religious or

a benevolent character. They are described by the statute (Sec. 7109, R. S. 1909) as being a voluntary association, organized solely for the benefit of its members and their beneficiaries; which beneficiaries are named, and no one not of the class named can be a beneficiary. [Herzberg v. Modern Brotherhood, 110 Mo. App. 328; Dennis v. Modern Brotherhood, 119 Mo. App. 210; Wilson v. American Benevolent Ass'n, 125 Mo. App. 597; Kroge v. Modern Brotherhood, 126 Mo. App. 693.]

Non-resident fraternal associations, seeing the valuable privileges and exemptions granted by the Legislature of this state to our own associations, sought admittance and it was granted by sections 7111, 7112, R. S. 1909, *on condition* that they brought themselves "within the description" of our own associations, as set forth in section 7109. Now if a Missouri fraternal organization were to issue a certificate payable to the legal representative or legatee of the member, it would not be valid, as is shown by the authorities above cited; yet, according to the effect of the claim of defendant, if such certificate is issued by a foreign association, it is valid and enforcible under our statute. This presents the extraordinary situation of affirming that you may enforce an obligation under a statute which that statute forbids.

In order to be exempt from the general life insurance law, a foreign association claiming to be a fraternal benefit organization, must be such and one as comes within the terms of a domestic organization, and if the beneficiaries to which its insurance funds are payable are not of the same classes with those of the domestic association, it does not come within such description. [Dennis v. Modern Brotherhood, supra.]

It seems to us that a fair test of whether the defendant organization comes within the description of a domestic organization as it is described in Sec. 7109, may be had by supposing the following not improba-

ble case: If a foreign organization should apply to
the State Insurance Commissioner for a license to do
business in this state and it should appear to him that
such organization had classes of beneficiaries to which
it could issue benefit certificates, which our law does
not recognize and which would be invalid, as a frater-
nal benefit contract, under our law, and he should re-
fuse on that ground, could he be compelled to do so by
mandamus? Could he not successfully answer such
writ by showing that the organization proposed to
come into this state and do a class of business—in-
sure for a class of beneficiaries— not authorized or
allowed in this state? It seems to us that under the
authority of State ex rel. v. Orear, 144 Mo. 157, and
State ex rel. v. Vandiver, 213 Mo. 187, 198 *et seq.,* that
he could.·

But it has been suggested that the St. Louis Court
of Appeals, in Armstrong v. Modern Brotherhood,
132 Mo. App. 171, differed from the views of this court
as expressel in the Dennis case, supra, and has cer-
tified the case to the Supreme Court for final and
authoritative determination, and we are asked to with-
hold a decision of this case until that is decided. The
St. Louis Court of Appeals, in refusing to approve of
the Dennis case, seemed to entertain the view that if
the foreign association was organized for the benefit
of its members and their beneficiaries and not for
profit, and had a lodge system with ritualistic work,
it was a fraternal beneficiary association and came
within the description of a domestic association as
required by our statute, regardless of whether the
beneficiaries in the foreign association corresponded
to those permitted in the domestic association. In
other words, that court stated that the classes of
beneficiaries named in our statute was no part of the
"description" with which foreign associations must
comply. But as shown and explained by that court

in the late case of Ordelheide v. Modern Brotherhood, 158 Mo. App. 677, although the foreign association is organized for the benefit of its members and not for profit, and although it has a lodge system with ritualistic work, yet if it had classes of beneficiaries, some recognized and some not recognized by our statute, it could not issue a fraternal benefit certificate to any of those not named, by our statute, and claim exemption from the statute applicable to old line companies, such as disability to defend on the ground of suicide. Thus leaving the only difference between the two courts to be that this court holds, as in the Dennis case, that if the foreign association has a class of beneficiaries not allowed to our domestic associations, it does not come "within the description" of our statute and cannot therefore do a fraternal benefit insurance business in this state freed from our general insurance laws; while the St. Louis Court of Appeals holds that it may do such business, exempt from our insurance laws, if the *particular certificate* is payable to a beneficiary whom our statute permits a domestic organization to insure.

But as the case before us involves another proposition which must defeat defendant, regardless of the foregoing question, and as the difference between the two courts is to be soon determined by the Supreme Court, we will not place our decision on the matters hereinbefore stated, and we have only mentioned them in consideration of elaborate arguments of counsel for either side.

Coming therefore to the question decisive of the case, we find the certificate in controversy contains the following clause providing for payment of an annual sum if the member lived beyond seventy years:

"Two hundred dollars each year, for a period of ten years, will be paid the said Stephen L. Umberger, beginning with his seventieth birthday; when said member has received an amount equal to the face of

this certificate, this certificate shall be determined cancelled and of no effect and must be surrendered to this fraternity for cancellation."

In a case already referred to, an organization, resident in the state of Colorado, sought to obtain a license from the Insurance Commissioner of this state and its application therefor was refused, whereupon it applied to the Supreme Court for a mandamus to compel the commissioner to issue the license. The commissioner in answer to the writ showed that the organization was authorized to issue benefit certificates for insurance like that provided in the certificate in controversy which we have just set out. The Supreme Court justified the commissioner in his refusal of the license, and denied the writ. [State ex rel. v. Orear, 144 Mo. 157.] Under the law of that state and the constitution of the association in that case, it was a fraternal beneficiary association organized under the laws of Colorado and conducted its business solely for the benefit of its members and not for profit, and obtained its funds by means of dues and assessments, authorized both by the laws of Colorado and Missouri; and it had a lodge system of government and a ritualistic form of work. It was formed and organized and was to be carried on for the sole benefit of its members and their beneficiaries, and not for profit. It thus met all the tests of a fraternal benefit association, as such; yet since it authorized, in addition to the fraternity insurance recognized by our statute, another form of insurance, in effect an endowment form, the Supreme Court in that case ruled that it did not "come within the provisions of our statute," and could not do business in this state as a fraternal organization.

Defendant's argument and brief is a concession that State ex rel. v. Orear, supra, would be a controlling authority for plaintiff were it not that the certificate was not a Missouri contract. To sustain this

assertion defendant relies upon the fact that it is a resident corporation of Iowa and the deceased member was a citizen of Kansas before his insurance and up to his death. We do not see that such fact should control the question in the light of other patent facts. He only became a contracting party with defendant by reason of becoming a member of a Missouri lodge, organized under and by permission of the laws of Missouri. He made application for membership (his proposal for a contract) and paid his assessments, as well as per capita tax in this state. There was no liability on the contract until these payments were made and the contract delivered. He was subject to expulsion by the lodge in this state, and finally, his death was to be reported by that lodge.

But in addition to this, under the laws of the association the benefit certificate was sent by defendant to the president of the local lodge in Missouri. Defendant's constitution, division x, sec. c, reads that, "Upon receipt of the benefit certificate (from the home office) the president shall notify the candidate and he shall be initiated by the subordinate lodge at a regular or special meeting." Thus we have the certificate in the hands of the president of the Missouri local lodge and his notice to the applicant to attend for initiation. Manifestly, the delivery of the certificate is intended to be made by the president to the member at such time and place.

The law is that the place where the final act occurs which makes it a binding contract, is the place of contract, and where an insurance contract is not to become completed or fully executed until a payment of a premium and delivery, the place of payment and delivery will be the place of contract, even though the contract should state the place of the insurer's residence should be deemed the place of contract. [Cravens v. Ins. Co., 148 Mo. 583.] In that case the

following is quoted from Fletcher v. New York Life
Ins. Co., 13 Fed. Rep. 526:

"The defendant company was doing business in
Missouri, with the privileges granted to it here, when
said insurance was effected.  It may be that the
formal acceptance of the proposed contract was by
the letter of the contract, to be consummated in New
York.  The broad proposition, however, remains, no
artifice to avoid which can be upheld.  The statutes of
Missouri, for salutary reasons, permit foreign cor-
porations to do business in the state on prescribed con-
ditions.  If, despite such conditions, they can by the
insertion of clauses in their policies withdraw them-
selves from the limitations of the Missouri statutes,
while obtaining all the advantages of its license, then a
foreign corporation can by special contract, upset the
statutes of the state and become exempt from the re-
quirements of law.  Such a proposition is not to be
countenanced.  The defendant corporation. chose to
embark in business within this state, under the terms
and conditions named in the statute.  It could not
by paper contrivances, however specious, withdraw it-
self from the operation of the laws, by force of which
it could alone do business within the state.  To hold
otherwise would be subversive of the right of a state
to decide on what terms, by comity, a foreign corpora-
tion should be admitted to do business or be recognized
therefor within the state jurisdiction.  Each state can
decide for itself whether a foreign corporation shall be
recognized by it, and on what terms.  Primarily, a
corporation has no existence beyond the territorial
limits of the state creating it, and when it undertakes
business beyond, it does so only by comity.  The de-
fendant corporation having been permitted to do busi-
ness in Missouri, under the statutes of the latter, was
bound by all the provisions of those statutes, and could
not, by the insertion of the many clauses in its forms

of application, etc., withdraw itself from the obligatory force of the statute. The contract of insurance, therefore, is a Missouri contract, and subject to the local law."

A leading case on this subject is Equitable Life Society v. Clements, 140 U. S. 226, and it is in accord with Cravens v. Ins. Co. As the syllabus is, in some degree, misleading in stating a condition as to acceptance of the contract in the foreign state which does not appear in the opinion, we quote:

"The application declares that the contract 'shall not take effect until the first premium shall have been actually paid during the life of the person herein proposed for assurance.' The petition alleges that that premium and two annual premiums were paid in Missouri. The answer expressly admits the payment of the three premiums, and, by not controverting that they were paid in Missouri, admits that fact also, if material. [Missouri Rev. Stat. 1879, sec. 3545.] The petition further alleges that the policy was delivered in Missouri; and the answer admits that the policy was, 'at the request of the said Wall, transmitted to the state of Missouri and was delivered to said Wall in said state.' If this form of admission does not imply that the policy was at the request of Wall transmitted to another person, perhaps the company's agent, in Missouri, and by him there delivered to Wall, it is quite consistent with such a state of facts; and there is no evidence whatever, or even averment, that the policy was transmitted by mail directly to Wall, or that the company signified to Wall its acceptance of his application in any other way than by the delivery of the policy to him in Missouri. Upon this record, the conclusion is inevitable that the policy never became a completed contract, binding either party to it, until the delivery of the policy and the payment of the first premium in Missouri; and consequently

that the policy is a Missouri contract and governed by the laws of Missouri."

It follows that the judgment should be affirmed. All concur.