FOURNET, Justice.
 

 Mrs. Jennie Hammon, the named beneficiary in a policy issued on the life of her late husband, William J. Hammon, by the Western Mutual Life Association, sued the Occidental Life Insurance Company, which had assumed all of the obligations under the policy, to recover the face value thereof, $3,000, alleging that all of the premiums had been paid up until the date of her husband’s death, and, in the alternative, that if the .premiums had not been paid the policy had a reserve sufficient to extend it beyond the date of the insured’s death; further in the alternative, if the policy did not have such a reserve that, being a policy for a term extending beyond twenty years, under the laws of this state, the company was compelled to maintain such a reserve.
 

 In bar of the action the defendant pleaded prescriptions of one and two years and, with reservation of its rights under these pleas, answered denying that the policy was in force and effect at the time of the insured’s death for it had lapsed and, being a term policy of ten years, it had no reserve or surrender value; consequently, there could be no liability thereunder.
 

 The trial judge overruled the pleas of prescription and rendered judgment in favor of the plaintiff on the merits. The defendant has appealed.
 

 The Western Mutual Life Association of Los Angeles, California, issued its policy No. B-2S220, labeled “Natural Premium:
 
 *454
 
 Convertible,” in the amount of $3,000 on the life of William J. Hammon on March 4, 1924, for a yearly premium of $39.15 for the first ten years, and, thereafter, at increased rates according to the attained age ■of the insured as provided for in the rules and by-laws of the association, an estimation •of which was given in the policy. On December 31, 1927, the Occidental Life Insurance Company, the defendant here, took ■over the management of the Western Mutual Life Association and issued to the insured a guarantee certificate, effective that date, assuming all of the obligations of the insurer under the terms of the policy. At the end of the ten-year period, during which the yearly premiums of $39.15 were maintained, it appears that a notice was sent to the insured advising him of the increase in rates at his attained age (fifty-five years). The insured then, on April 6, 1934, wrote the company advising them in effect that the proposed increase was “out of all reason” .and that he had decided to let the policy lapse. On December 27 following, the insured was killed in an automobile accident, but this suit was not instituted until July 26, 1937.
 

 The plea of prescription of one year is predicated on the fact that the charter and by-laws of the insurer (alleged to be a fraternal benefit society or association within the meaning and contemplation of Act No. 115 of 1906, as amended by Act No. 256 of 1912) provided that “No suit at law or in equity shall be maintainable against the Association, unless the same shall be commenced within one year after the death of the deceased.”
 

 A fraternal association within the meaning of the act is defined to be “any corporation, society, order or voluntary association, without capital stock, organized and carried on solely for the mutual benefit of its members and their beneficiaries, and not for profit and having a lodge system and ritualistic form of work and representative form of government * * *.” Section 1. In Section 2 it is provided that for any such organization to be deemed as operating on the lodge system, it is not only necessary that the members thereof “be elected, initiated and admitted in accordance with its constitution, laws, rules and regulations and prescribed ritualistic ceremonies” but it is also necessary that they “shall be required by the laws of such society to hold regular or stated meetings at least once in each month * * Societies falling into this classification are, according to Section 4, “exempt from all provisions of the insurance laws of this State * * *.”
 

 An examination of the rules and by-laws of the Western Mutual Life Association shows conclusively that it was not a fraternal benefit society within the meaning and contemplation of Act No. 115 of 1906, as amended. It is true that under its rules and by-laws the privileges of the association were limited to Masons in good standing who could pass the required medical examination, but there is no provision in the bylaws for a ritualistic form of government. Defendant’s own witness, F. M. Hope, actuary of the defendant company, admitted this. These facts completely refute the prima facie showing of the defendant that it was a fraternal benefit society within the mean
 
 *456
 
 ing of the act by its introduction into evidence of a certificate of the Secretary of State of Louisiana to the effect that the Western Mutual Life Association was duly licensed to do business in this state as a fraternal association under the provisions of Act No. 115 of 1906, as amended, from 1919 to 1926. Moreover, Masons are expressly excluded from the operation of the act for, in Section 29 thereof, is found the provision that “nothing contained in this Act shall be construed to affect or apply to grand or subordinate lodges of Masons * *
 

 It necessarily follows that the Western Mutual Life Association, at the time of the issuance of this policy, was subject to all of the provisions of the insurance laws of this state, one being that every policy of insurance “shall contain the entire contract between the parties and nothing shall be incorporated therein by reference to any constitution, by-laws, rules, application or other writings unless the same are endorsed upon or attached to the policy when issued * * * ” Act No. 52 of 1906. Consequently, the period of limitation prescribed in the by-laws of the Association for the filing of suits cannot have any effect upon the plaintiff’s right of action in this case as these by-laws were not attached to and made a part of the policy sued on.
 

 Defendant’s next contention, as stated in its brief, is “that the present suit is predicated upon a lapsed or forfeited policy, because the insured, William J. Hammon, not only declined to pay any premiums after March 4, 1934, but * * * on April 6, 1934, elected to terminate and lapse his policy. Upon such an election, the only right that then existed under the policy was the right to recover the cash’surrender value, if any existed, and all rights under the policy became barred by the two-year statute of limitations on April 6, 1936, some time before the present suit was instituted.”
 

 The basis of this prescriptive plea is to be found in the last sentence of Section 1 of Act No. 68 of 1906, wherein it is provided that “No action shall be maintained to recover under a forfeited policy, unless the same is instituted within two years from the day upon which default was made in paying the premium, installment, interest or portion thereof for which it is claimed that forfeiture ensued.”
 

 The object of the act, as expressed in its title, is to prohibit “life insurance companies from forfeiting policies for default in payment of premium * * * unless written or printed notice has been mailed to the policy holder or the assignee of the policy,” but the insured’s “right to a surrender value, extended insurance, or paid-up policy” is expressly excepted from the application of the act under the terms thereof. See Frey v. Great Southern Life Insurance Company, La.App., 167 So.
 
 480;
 
 and Compton v. Amicable Life Insurance Company, 182 La. 991, 162 So. 751, 105 A.L.R. 1087.
 

 The plaintiff is not seeking to recover under a forfeited policy in this case. Her suit is predicated upon the fact that the policy is in full force and effect either because of the payment of premiums or because of extended insurance purchased with the reserve accumulated thereunder, as required by Act No. 193 of 1906; consequently, the two-year prescriptive period provided for in
 
 *458
 
 Act No. 68 of 1906 is not applicable to this case.
 

 But the defendant claims that the insured’s letter of April 6, 1934, informing the defendant company that he had elected to let the policy lapse, had the effect of cancelling the policy, and that the only right he or his beneficiary had thereafter was the recovery of the surrender value thereof, if any, citing in support thereof the cases of Tucker v. Equitable Life Assurance Society of the United States, 174 La. 598, 141 So. 71; and Fowler v. State Life Insurance Company, La.App., 160 So. 139.
 

 These two cases are authority only for the proposition that an insured under a contract of insurance has the irrevocable right to demand the surrender value of his policy at any time and when his election to exercise this right is communicated to the insurance company, it becomes binding on both parties, fixing their rights accordingly.
 

 In the instant case the insured only advised the defendant company that because of the unreasonableness of the accelerated premiums at his attained age, he had decided to “let the policy lapse.” He did not exercise his privilege under the policy to demand the surrender value (as reserve) thereof (.1) in cash, (2) by the purchase of term insurance for the full face value of the policy, or (3) by the purchase of a smaller amount of paid up insurance. Having failed to do so, the reserve of the policy under the mandatory provisions of Section 2 of Act No. 193 of 1906, must “be applied to continue the insurance in force at its full amount * * * so long as such surrender value will purchase non-participating temporary insurance * * See Succession of Watson v. Metropolitan Life Insurance Company, 183 La. 25, 162 So. 790; and McBride v. Acme Industrial Life Insurance Society, 179 La. 701, 154 So. 741.
 

 It is the defendant’s contention, however, that since the contract of insurance was for a ten-year term with the privilege of renewal granted the insured, the plaintiff cannot recover because at the time the policy lapsed it had neither a reserve nor a surrender value with which extended insurance might be purchased. It is defendant’s argument that the reserve under this type of policy increases for the first few years of the term but decreases as it nears the end until at the expiration thereof the reserve is exhausted, this process being repeated from term to term during the life of the policy.
 

 Under the provisions of Act No. 193 of 1906, life insurance policies, including term insurance for more than twenty years, cannot be forfeited for nonpayment after three years’ premiums have been paid. Section 1. Section 2 of the act provides that when such a policy lapses
 
 “The reserve on such policy
 
 computed according to the standard adopted by said company, together with the value of any dividend additions upon said policy, after deducting any indebtedness to the company and one-fifth of the said entire reserve, shall upon demand with surrender of the policy be applied as a surrender value as agreed upon in the policy, provided that if no other option expressed in the policy be availed of by the owner thereof, the same without any further act on the part of the owner of the policy,
 
 shall be ap~
 
 
 *460
 

 plied to continue the insurance in force at its full amount
 
 * * *
 
 so long as such surrender value will purchase non-participating temporary insurance
 
 *
 
 * *
 
 and provided further that any value allowed in lieu thereof shall be at least equal to the net value of the temporary insurance * * * herein provided for.” (Italics ours.) Any attempted waiver of the provisions of Section 2 “in any application, policy or otherwise,” is expressly prohibited under penalty of being declared void.
 

 A mere reading of the policy will show that it is for a term in excess of twenty years, conditioned upon the payment of a yearly premium of $39.15 for a peroid of ten years and thereafter at increased rates, according to the attained age of the insured. While it is declared in the contract that the premiums are to be paid “in accordance with the Table of Premiums for Renewals on the second page of this policy * * *,” and the second page is headed “Renewal Premiums,” the whole contract, when read together, unmistakably shows that it is a single contract providing for yearly premiums which are graduated at fixed intervals according to the age of the insured. The contract further provides that it is “absolutely incontestable, after two years from date of issue, for any cause except non-payment of premiums.” There is no provision for renewal or exchange of contract at the end of any of the periods. We must conclude, therefore, that it is a life policy. In this conclusion we are supported not only by the testimony of plaintiff’s witness, Mr. Dubourg, and defendant’s witness, Mr. Tookey, 'but also by the by-laws and rules of the association wherein it is declared that “Rates are adjusted and policy renewed without medical examination as the insured reaches the attained ages of 31, 41, 46, 51, 56, and 61. At 65, if not previously converted, the policy
 
 automatically
 
 becomes an Ordinary Life.” (Italics ours.)
 

 The provisions of the policy with respect to a reserve are enigmatical, for although on the first page it is stated that “The reserve on this policy is based on the American Experience Table of Mortality and three and one-half per cent interest,” on the following page provision is made for conversion privileges “equal to the reserve that the rules of the Association provide,” and on the last page it is further provided that “Under maturity of this Policy its legal surrender will be required, and any indebtedness of the Insured and the Association will be deducted in any settlement thereunder,” there is nothing in the policy to give us the slightest indication of what this reserve would amount to from year to year.
 

 By referring to defendant’s answer, we find in paragraph No. 13 thereof that it pleaded “said policy accumulated no reserve, no cash surrender value, and no loan value * * During the trial of the case defendant sought to establish by A. H. Tookey, its actuary from California, that under the mathematical principles of life insurance, a ten-year term policy has no reserve at the end of the tenth year and, in corroboration thereof, produced a book published by the National Underwriter Company entitled “Terminal Reserves and Net Premiums, American Experience Table at 3%%>” wherein is a
 
 *462
 
 schedule of the reserves that exist on ten-year term policies computed according to-the American Experience Table of Mortality, showing that the reserve at the end of the tenth year in such policies is completely absorbed. Tookey also testified that in calculating the reserve on policies of the renewal term type the accumulation of the reserve is exhausted at the end of each term period.
 

 It is our opinion that reserves calculated in such a manner are in violation of the spirit and letter of Act. No. 193 of 1906, which makes it mandatory that insurance companies allow for a reserve on term policies in excess of twenty years and on all life policies and, therefore, does not apply to the one sued on in this case.
 

 On the other hand, plaintiff’s witness, John J. Dubourg of New Orleans, testified that the reserve under the policy in controversy here, if for a “life expectancy,” would be $403.20, which would be sufficient to purchase single premium term insurance extension for the face value of the .policy to December 31, 1941, and if interpreted to be for a “term expectancy,” the reserve should be not less than $228, which would be sufficient to purchase extended insurance for the face value of the policy to January 26, 1939. We are not satisfied with this proof because of the apparent error in the calculation of plaintiff’s witness. It seems unreasonable to us that a reserve of $403.20 could accumulate during a period of ten years, after deducting one-fifth on gross reserve as permitted by Louisiana law, from the ten yearly premium payments of $39.15.
 

 We must, therefore, .remand the case to the lower court for the introduction of evidence to show the amount of reserve the insurer should have set aside for • the benefit of the insured under the policy in question as required by the laws of this state, in order that it may be determined whether or not such reserve is sufficient to extend the policy beyond the date of the insured’s death.
 

 For the reasons assigned, the judgment of the lower court is annulled and set aside and it is now ordered, adjudged, and decreed that this case be remanded to the lower court for further proceedings consistent with the views- herein expressed. All costs to await the final decision of this case.
 

 O’NIELL, C. J., dissents.
 

 ODOM, J., dissents and hands down reasons.