WHEELER

v.

BEN HUR LIFE ASS'N.

Court of Appeals of Kentucky.

Nov. 20, 1953.

Rehearing Denied Feb. 26, 1954.

designated as a beneficial certificate purporting to insure his life in the amount of $5,000. Wheeler died eight months later and his widow, the appellant, as beneficiary, filed claim for the $5,000. The Association's defense to the claim was sustained by the chancellor on the ground the insured made material false statements in his application.

It is stipulated that the only issue in the case is whether the application signed by Wheeler is admissible in evidence. The answer to the question turns on whether the Association is, as it claims to be, a fraternal benefit society. If it is such a society, the application is admissible in evidence. KRS 296.010, repealed in 1950 and reenacted as 304.013. But if at the time of issuance of the certificate the Association was doing business as an old line insurance company, the application is inadmissible because it was not attached to the policy. KRS 297.-100, repealed and reenacted in 1950 as 304.-655, and KRS 299.130.

The contention that the Association is in effect an old line insurance company is based upon the charge it has engaged in practices which only old line insurance companies are permitted to engage in; and that its primary purpose is to sell insurance policies, such fraternal activities as it engages in being incidental. In defense the Association contends it is now and always has been a fraternal benefit society; that the Director of Insurance of the Commonwealth of Kentucky has issued to it a license as a fraternal society, and the decision of the Director cannot be impeached collaterally in this action.

Chas. G. Middleton, Edwin G. Middleton, Middleton, Seelbach, Wolford, Willis & Cochran, Louisville, for appellant.

Luther M. Roberts, Robert E. Hogan, Louisville, for appellee.

COMBS, Justice.

The Supreme Tribe of Ben Hur, predecessor of Ben Hur Life Association, was organized as a fraternal benefit society in the State of Indiana in January, 1894. It was so recognized by this Court in 1913. Ferlage v. Supreme Tribe of Ben Hur, 153 Ky. 645, 156 S.W. 139. The Ben Hur Life Association, appellee here, has been licensed in Kentucky for many years as a fraternal benefit society. In 1947 the Association issued to W. Blakemore Wheeler what was

We will consider first whether the action of the Director of Insurance in licensing the Association as a fraternal benefit society precludes us from looking at the facts. Some cases from other jurisdictions hold that under the facts there shown an administrative finding of this sort is not subject to collateral attack. See Modern Woodmen of America v. Casados, D.C.N.M., 17 F.Supp. 763, and State ex rel. Biel v. Royal Neighbors of America, 44 N.M. 8, 96 P.2d 705.

The Association also cites Kentucky cases to the effect that under given circumstances the action of an administrative body or officer is immune from collateral attack. Carter v. Taylor, 313 Ky. 445, 231 S.W.2d 601; Reinsperg v. Reed, 313 Ky. 683, 233 S.W.2d 412; Thomson v. Tafel, 309 Ky. 753, 218 S.W.2d 977. In those cases, however, the administrative findings were of purely local concern, such as the need for a particular improvement, or the issuance of a license to sell alcoholic beverages. The court took the position that such matters were peculiarly within the knowledge of local administrative bodies and the courts ordinarily would not interfere with their findings, not because of any lack of authority to do so, but because of the recognition that local authorities ordinarily are better informed concerning such matters than are the courts.

The cases of Yeomen of America v. Rott, 145 Ky. 604, 140 S.W. 1018, and Brotherhood of Railroad Trainmen v. Woods, 256 Ky. 613, 76 S.W.2d 911, deal with the general subject now before us but are distinguishable on their facts.

 The New Mexico cases cited above were instituted by the State officials against fraternal societies to collect a statutory tax imposed upon insurance companies. A New Mexico statute, Comp.St. 1929, § 71–331, read: "Every fraternal benefit society organized or licensed under this act is hereby declared to be * * * exempt from" any and all taxes. The comparable Kentucky statute, KRS 300.010, reads: "* * * fraternal benefit societies * * * shall be exempt from all provisions of the insurance laws of this state * * *." In other words, the New Mexico statute exempted fraternal benefit societies *licensed* as such, but the Kentucky statute exempts only those that are actually fraternal benefit societies. Consequently, we are concerned here only with whether the Association was doing business as an insurance company at the time the certificate was issued to the decedent Wheeler. In deciding this question, the license issued by the Commissioner of Insurance is entitled to weight but we do not regard it as conclusive. Smoot v. Bankers' Life Ass'n, 138 Mo.App. 438, 120 S.W. 719; Hammon v. Occidental Life Insurance Co., 198 La. 449, 3 So.2d 694; 1 Couch on Insurance, section 253; 63 A.L.R. 711, at 736 and 737. We consider the quotation which follows from 38 Am.Jur., Mutual Benefit Societies, section 5, as declaratory of the general rule:

"* * * Broadly speaking, it may be said that when a company, society, or association, either voluntary or incorporated, and whether known as a relief, benevolent, or benefit society, or by some similar name, contracts for a consideration to pay a sum of money upon the happening of a certain contingency, and the prevalent purpose and nature of the organization is that of insurance, it will be regarded as an insurance company and its contracts as insurance contracts, and this without regard to the manner or mode of the payment of the consideration, or of the loss or benefit. This question must be determined by the language of the contract and the character of the business transacted, regardless of any name by which the organization is called, and regardless of the mere form of the organization."

We come now to the question whether the Association was in effect an insurance company at the time of issuance of the certificate. We are convinced from the evidence that it was. It is elementary that the law looks at substance instead of form, and is not deceived by the gloss of words. As is required by KRS 300.010, the Association's constitution and by-laws duly provide for a lodge system, ritualistic form of work, and representative form of government. It has no capital stock and is ostensibly organized solely for the mutual benefit of its members. But actually, while giving superficial attention to these requirements, the Association has been engaged in the life insurance business. The local agent of the Association draws a salary and receives as a commission 50% of the first premium on all insurance policies. He receives a smaller percentage of subsequent premiums. To assist him, he has another agent who is paid a small salary, plus a commission of 40% of

the first premium. The commissions in both cases are based upon the amount of insurance sold and not upon the number of members procured. This is substantially the same system followed by old line insurance companies. The efforts of the Association's agents are directed primarily toward selling insurance rather than recruiting members for the lodge. Little, if any, emphasis is placed upon the membership of an insured in the lodge. The Association's constitutional and by-laws provisions relative to ritualistic work are observed only perfunctorily. No new member has gone through an initiation ceremony since 1941. The meetings of the lodge are held from place to place without notice to the members, and are attended usually by only five or six persons who are officers of the Company. The officers comply with the formality of electing members, but no one has been refused membership in the last 42 years. On many occasions the insurance policy is issued before the so-called election is held. Practically all members of the Louisville organization are now or have been holders of life insurance policies issued by the Association. There is little or no solicitation of social members. Only insured members are desired. There is nothing in the application to indicate that members are required to pay dues. Membership dues are deducted from premium payments on the policies.

It is contemplated by KRS 296.-010 that a fraternal society shall secure members through the lodge system exclusively. This Association obtains few, if any, members through the lodge system as such. On the contrary, practically all of its members are obtained through the efforts of local agents who are for all practical purposes insurance salesmen. The statute contemplates that fraternal societies will operate as benevolent institutions, having for their primary objective social and moral benefit to the members, the insurance feature being merely incidental. Umberger v. Modern Brotherhood of America, 162 Mo. App. 141, 144 S.W. 898; Commonwealth v. Equitable Beneficial Association, 137 Pa. 412, 18 A. 1112. We are convinced from the evidence in this record that the primary function of the Ben Hur Life Association is to sell insurance, and that the Association actually is an insurance company operating under the guise of a fraternal benefit society.

The judgment is reversed for proceedings consistent with this opinion.