MODERN WOODMEN OF AMERICA v. CASADOS, State Corporation Commissioner, et al.

No. 2829.

District Court, D. New Mexico.

Jan. 20, 1937.

764

Frank H. Patton, Atty. Gen., C. R. McIntosh, Sp. Asst. Atty. Gen., Creekmore Wallace, of Oklahoma City, Okl., and John M. Wheeler, of Tulsa, Okl., for defendants.

Before PHILLIPS and McDERMOTT, Circuit Judges, and NEBLETT, District Judge.

McDERMOTT, Circuit Judge.

Upon the hearing of plaintiff's motion for temporary injunction and defendants' motion to dismiss the bill, defendants announced their intention to stand upon their motion to dismiss. Accordingly this court, after due consideration, directed entry of a final decree.[1] Defense counsel then asked to be relieved of their election to stand on their motion to dismiss the bill upon the ground that they had assumed this court would decide a constitutional question which was of interest to them in cases pending in other courts; that since the court was not beguiled into deciding the constitutional question, they desired to file an answer. This request was granted. A temporary instead of a permanent injunction was issued upon plaintiff's motion.

Now defendants ask that this temporary injunction be set aside or modified so that a suit to recover the taxes may be brought in the state court, that is, to avail themselves of the right which they had at the outset to stay proceedings here pending a suit in the state court, 28 U.S.C. A. § 380, and which they deliberately declined to utilize because of their wish that we decide the constitutional question. This we decline to do for two reasons. Defendants' statutory right to stay the proceedings here expired many months ago, when the final hearing was held on the application for the temporary injunction. The statute so reads. Again, if counsel had advised this court of their desire to undo all that had been done, to discard as worthless the considerable time and money already expended on the case in assembling three judges from distant points, and in examining voluminous briefs, when they asked, as a matter of grace, that they be permitted to withdraw an election deliberately made, that request would have been denied. The present motion to set aside or modify the temporary injunction is denied. Defendants' motion

Nelson C. Pratt, of Omaha, Neb., James A. Marsh, of Denver, Colo., and J. O. Seth, of Santa Fe, N. M., for complainant.

---

[1] Our opinion is reported in 15 F.Supp. 483, and reference is made thereto for a fuller statement.

for leave to file interrogatories and for production of documents was allowed at the trial and plaintiff has complied. Defendants' motion to continue was denied at the trial, there being no showing of diligence in procuring the testimony of the witnesses, nor that their attendance could be had within any reasonable time; however, with consent of plaintiff, their statements were accepted as their testimony. Plaintiff's motion to strike from defendants' answer was overruled at the trial, with leave to present the arguments in support on the case as submitted on the proofs.

The sole question in the case is whether plaintiff, organized as a Fraternal Benefit Society in Illinois and recognized by the courts of that state as such, and licensed from 1908 to the present in New Mexico as a Fraternal Society, is subject to the 2 per cent. premium tax laid by a statute which specifically exempts fraternal societies. Defendants claim plaintiff is subject to the tax because, as they assert, plaintiff writes some policies not authorized by the fraternal code, and because of its size, and because of some alleged discrimination among its members. Plaintiff denies it issues policies not authorized and denies discrimination; and further says that if it be so, the remedy is to require it to desist, and impose the statutory penalties for past infractions; plaintiff contends that such unauthorized practices do not convert it from a fraternal society into an old line insurance company.

■ The New Mexico statute is the blue print which we must follow.[2] The legislators of New Mexico, for reasons which doubtless seemed good to them, have exempted fraternal societies from this tax with the one hand, and with the other authorized such societies to issue essentially the same policies as do old line companies subject to the tax. With the wisdom or fairness of such legislation we are not concerned, for it has been repeatedly held that legislatures may deal with fraternal societies as a class apart from old line

companies,[3] and no old line company is complaining of the discrimination.

■ The statute levies the 2 per cent. premium tax upon "every foreign insurance company licensed to transact an insurance business in the state of New Mexico." Section 71-127, Comp.St.N.M. 1929. The tax is not laid upon insurance policies, but upon insurance companies. Prior to 1925 the statute read that "every insurance company * * * transacting business in this State, except domestic, mutual, co-operative or assessment associations, * * * shall pay" such tax. Chapter 194, § 2, Sess.Laws 1921. It was enacted as a part of the insurance code, and not as a part of the Fraternal Benefit Code passed at the same session, and found in chapter 197, Sess.Laws 1921. Although the wording is not identical, both statutes taxed companies as distinguished from policies, and both were directed toward insurance companies as distinguished from Fraternal Benefit Societies.

To make assurance doubly sure, the legislature at the same time enacted section 71-331, Comp.St.N.M.1929, which reads:

"Every fraternal benefit society organized or licensed under this act is hereby declared to be a charitable and benevolent institution, and all of its funds shall be exempt from all and every state, county, district, municipal and school tax, other than taxes on real estate and office equipment."

Plaintiff argues that since it is conceded that plaintiff has never been licensed as an insurance company, it is not subject to the tax, even if it is one. The argument is persuasive, for the present statute so reads. It is likewise forcibly argued that since plaintiff is concededly licensed as a fraternal, it is exempt; again the statute so reads. But we need not go so far. Certainly if the plaintiff is a fraternal benefit society, it is not subject to the tax; the quoted statute of exemption removes that point from the arena of argument.

We hold plaintiff is a fraternal benefit society as defined by the New Mexico

[2] Kirk v. Fraternal Aid Ass'n, 95 Kan. 707, 149 P. 400; Ordelheide v. Modern Brotherhood of America, 268 Mo. 339, 187 S.W. 1193; Haner v. Grand Lodge, A. O. U. W., 102 Neb. 563, 168 N.W. 189; Marcus v. Heralds of Liberty, 241 Pa. 429, 88 A. 678.

[3] Northwestern Life Ins. Co. v. Wisconsin. 247 U.S. 132, 140, 38 S.Ct. 444, 62 L.Ed. 1025; Supreme Council of Royal Arcanum v. Behrend, 247 U.S. 394, 399, 38 S.Ct. 522, 62 L.Ed. 1182. 1 A.L.R. 966; Penn Mutual Co. v. Lederer, 252 U.S. 523, 531, 40 S.Ct. 397, 399, 64 L.Ed. 698. Note, 83 A.L.R. 469; Cooley's Briefs on Insurance, p. 86.

statutes. Sections 71-301 to 71-304, Comp. St.N.M.1929. We find it to be so on the proof. It has no capital stock; none but members may be insured; members must be initiated; applicants may be black-balled; plaintiff has lodges with ritualistic work; the members elect the governing body; all its policies permit assessments if need there be. It writes no level-premium policies. It fully complies with every element in the statutory definition.

Furthermore, plaintiff's status as a fraternal society stands adjudicated. Each year since 1908 it has presented to the state official authorized by the legislature to determine the question, its application to be licensed as a fraternal society. That official must determine whether it meets the statutory requirements as a fraternal society, or whether it is an insurance company. If it is one, its fees are nominal; if the other, they are substantial; certain capital requirements are made of one and not the other. Each year, the state official had, or could procure, copies of by-laws, policies issued, financial statements, or such other information as he needed. Each year plaintiff was determined to be a fraternal society and licensed as such. No one throughout the years has challenged such determination. No direct attack has ever been made on any such orders of the Superintendent of Insurance. The attack here is purely collateral. What the present head of the insurance department alleges is simply that the determinations of his predecessors were erroneous, and asks this court to disregard them. This we cannot do. Where a statute reposes the decision of a question of fact in an administrative officer or body, his decision thereon, unless set aside by a court of competent jurisdiction in an appropriate proceeding, is binding on the courts in subsequent litigation. Familiar instances are the assessment of property for taxation, or the determination of a reasonable rate for utilities; decisions of such bodies may be set aside if directly and

seasonably attacked and sufficient reasons exist; but when not so attacked, they are binding.

Determinations of such administrative officers are generally spoken of as adjudications. Whether the term is accurate is not material; administrative officers are not judges, but in determining fact questions and entering orders based thereon, they perform judicial functions. The label is unimportant; the fact remains that such determinations are binding because the legislature has reposed in such officials the power to determine such facts, and orders based thereon are conclusive until they are set aside or reversed in appropriate proceedings. They are not open to collateral attacks.[4] Apt statements of this rule and the basis therefor may be found in the decisions of the Supreme Court of the United States and the Supreme Court of New Mexico. Mr. Justice Holmes, in Chicago, B. & Q. R. Co. v. Babcock, 204 U.S. 585, 598, 27 S.Ct. 326, 329, 51 L.Ed. 636, said:

"The board was created for the purpose of using its judgment and its knowledge. * * * Within its jurisdiction, except, as we have said, in the case of fraud or a clearly shown adoption of wrong principles, it is the ultimate guardian of certain rights. The state has confided those rights to its protection and has trusted to its honor and capacity as it confides the protection of other social relations to the courts of law. Somewhere there must be an end."

In Van Patten v. Boyd, 20 N.M. 250, 150 P. 917, 918, the court adopted with approval this statement from Johnson v. Towsley, 13 Wall. 72, 20 L.Ed. 485:

"When the law has confided to a special tribunal the authority to hear and determine certain matters arising in the course of its duties, the decision of that tribunal, within the scope of its authority, is conclusive upon all others."

---

4 Miller v. United States (C.C.A. 10) 57 F.(2d) 987, certiorari denied 287 U.S. 625, 53 S.Ct. 79, 77 L.Ed. 542; Pleasant v. Missouri-Kansas-Texas R. Co. (C.C.A. 10) 66 F.(2d) 842, certiorari denied 291 U.S. 659, 54 S.Ct. 376, 78 L.Ed. 1051; Continental Petroleum Co. v. United States (C.C.A. 10) 87 F.(2d) 91 (decided December 14, 1936); Dennison v. Payne (C.C.A. 2) 293 F. 333; United States v. Wright, 11 Wall. 648, 20 L.Ed. 188; Van

Patten v. Boyd, 20 N.M. 250, 150 P. 917; City of Socorro v. Cook, 24 N.M. 202, 173 P. 682; Dwelling-House Ins. Co. v. Wilder, 40 Kan. 561, 20 P. 265; Provident Sav. Life Assur. Co. v. Cutting, 181 Mass. 261, 63 N.E. 433, 92 Am.St.Rep. 415; American Motorists Ins. Co. v. Central Garage, 86 N.H. 362, 169 A. 121. See, also, discussion in Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598.

If plaintiff is not or was not a fraternal benefit society it should not have been licensed as such; if the Attorney General or other law enforcing agency believed that the order of the Superintendent of Insurance was infected with fraud or contrary to law, the remedy was seasonably to invoke the aid of the courts in an appropriate proceeding to set aside his order. It is neither fair nor proper to permit such orders to go unchallenged for many years, induce reliance upon them by such acquiescence, and then ask courts to disregard the orders to the end that taxes and penalties may now be assessed for the years gone by.

Defendants' contentions to the contrary are not persuasive either in law or fact. It is claimed that upon occasions in the past inaccurate statements were made to the Superintendent of Insurance, or material facts suppressed, which induced him to issue the licenses. The orders granting the licenses issued in the past are not subject to collateral attack in this proceeding. Furthermore, none of the state officials who issued these licenses testified they relied upon any inaccuracies in the annual statements or were misled in any way. The proof here is entirely too sketchy to justify a court in setting aside the orders of the state authorities even if this were a direct attack.

■ It is urged that, taking a broad view of plaintiff's business, it is an insurance company in fact; that its fraternal features serve only to enable it to take advantage of statutory exemptions accorded fraternals. The large amount of insurance on its books, the number of its agents, the salaries of its officers, are relied upon as proof. There is little doubt that, during the years, the situation has changed. At the outset, the insurance feature of these societies was a mere incident to fraternity; more and more, fraternity has become the incidental feature. But the legislature has not put a limit on the amount of insurance a fraternal may write, or the number of its agents or officers, or the amount of their compensation. The courts cannot.

■ It is said that plaintiff is not operated "solely for the mutual benefit of its members" as the statute requires. The state officials, year after year, have ruled that it is. Defendants construe "mutual benefit" to mean that all members must be accorded "substantially equal" treatment; it is then pointed out that some of plaintiff's policy contracts are better than others. As used in this connection, "mutual benefit" means that no profits shall accrue to others than members. If there is discrimination among members, that is a matter for redress under other rules of law. But the charge is not supported. As changes have been made in policy contracts throughout the years, all approved by state officials, necessarily there have been rough edges; whenever a line must be drawn, there is always some discrimination between those close to the line on either side. Premiums are higher on a policy issued to-day than one on yesterday if the age of the insured changed yesterday. In their efforts to maintain solvency, fraternals often resort to their power to change rates, and groups are often adversely affected. But if all profits inure to members only, the society is operated for the "mutual benefit" of its members.

■ It is then said that plaintiff is really operated for the benefit of its officers and agents, who draw respectable salaries and commissions. Doubtless the officers and agents are satisfied with the salaries and commissions the members vote them, or they would quit. But the fact that satisfactory salaries and commissions are paid for services rendered does not convert a mutual company into a corporation for profit. There is no evidence that the salaries and commissions paid are out of line with those ordinarily paid by other large companies for similar services, and they do not seem to be so. Approximately $13,-000,000.00 commissions were paid under one contract for rewriting hundreds of millions of insurance. That reduces to less than $20.00 .a thousand for production cost, and there is no proof that such sum is extravagant. Defendants doubtless knew that insurance cannot be put on the books a policy at a time for less than such figure, or they would have undertaken to prove the amount unreasonable. The members, through their elective officers, authorized all payments. Such considerations as these do not bear upon the question of the non-profit character of the plaintiff corporation. Courts cannot convert a mutual company into a corporation for profit because some officer or agent is paid more than he is worth.

■ Defendants then argue that plaintiff is writing policies unauthorized by the

statute. All policies issued were filed with the defendant or his predecessors, and their issuance at least tacitly approved. If plaintiff has issued policies not authorized by the statute, the Superintendent of Insurance should not have approved the policies, or if he did the Attorney General should have brought a proceeding to restrain the exercise of unauthorized powers. A corporation cannot amend its charter or enlarge its statutory powers by exercising powers not authorized. Were it otherwise, any corporation would automatically become an insurance company by the simple expedient of issuing policies without authority.

This rule of law has been applied, by courts of respectable authority, to fraternal societies which have written policies not authorized by the statute of their creation. In Kolesar v. Slovak Evangelical Union, 122 Pa.Super. 318, 186 A. 302, 304, service of process was attempted on a fraternal society by the method applicable to old line companies because the benefit certificate sued on was not authorized except by old line companies. The Supreme Court of Pennsylvania held:

"It may be that the defendant society is going beyond its corporate powers and issuing policies of insurance rather than benefit certificates, but that does not make it an insurance company. If it is exceeding its chartered powers there is a legal way of stopping that by dissolving it unless it confines its activities within its corporate sphere. * * * Because it may be unlawfully usurping some of the powers of an insurance company does not make it one, nor subject it to be served with process as if it were an insurance company."

In Armstrong v. Modern Brotherhood of America, 245 Mo. 153, 149 S.W. 459, the court said:

"That the operations of the fraternal society as an insurance company "does not deprive the association of its character as a fraternal benefit association, and subject it to the laws governing old line insurance companies, and hence it may rely on suicide as a defense."

See, also, to same effect, Parker v. Sovereign Camp of Woodmen of the World (Mo.App.) 196 S.W. 424; Baltzell v. Modern Woodmen of America, 98 Mo. App. 153, 71 S.W. 1071; 63 A.L.R. 752, 753.

But again, we are not persuaded that the charge is supported in the proof. Section 71-305(2) authorizes the issuance of policies with withdrawal equities to the amount of the reserve, including extended and paid up insurance, if the society maintains "the usual reserve computed by the American experience table and four per cent. interest." Plaintiff issues endowment policies; in such policies the withdrawal equity equals the face of the policy at the end of a stated period; the statute authorizes the payment of "such withdrawal equities as its constitution and laws may provide."

Plaintiff's reserve is based on its own experience tables; it differs somewhat from the American tables. It also maintains a contingency reserve which fluctuates with the value of investments and increase or decrease in estimated expenses and mortality. Elaborate mathematical calculations are made in the briefs to establish that plaintiff's reserves are not enough. The proof on this point is unsatisfactory, to say the least, and assumptions must be indulged to arrive at any conclusion. Whether plaintiff's reserves are sufficient is a question confided to the decision of the Superintendent of Insurance and his actuaries. For years that official has approved policies issued by plaintiff with provisions for reserves, their application or withdrawal. Implicit in such approvals is a finding that the reserves met the statutory standard. Such approvals may not be collaterally attacked; but if this were a direct attack, the proof here does not clearly demonstrate the error of the state superintendent.

Many other similar complaints are made, for example, that the policies issued carry too heavy a loading for expense, that the per capita tax is unfair, etc. With those matters we have no concern. The injunction issued carefully protects the state officials in all their powers to protect policyholders; the injunction is narrowly limited to their efforts to collect a tax from which the legislature exempted plaintiff.

A vast array of authorities from other states are cited as to the rights of a holder of an unauthorized policy against a fraternal company. We will not review them. Some hold the contract void, and some enforceable; some construe certain benefit certificates as insurance policies and impose penalties which the statute imposes upon insurance policies. The Supreme Court of Oklahoma did at one time say

that the status of a fraternal society was determined by the character of its business transacted. Modern Order of Praetorians v. Bloom, 69 Okl. 219, 171 P. 917. But that statement has been lately described as dictum and expressly disapproved. Supreme Forest Woodmen Circle v. Bowen (Okl.Sup.) —— P.(2d) ——,[1] as yet unreported [in State report]. Other expressions may be found to the same effect as that in the Bloom Case. But we cannot yield our assent to the proposition that a creature of statute can enlarge its statutory powers, and change entirely its spots, by the simple expedient of exceeding its powers.

Defendants' real complaint, as we see it, is that the legislature has exempted fraternal societies from many of the burdens imposed upon insurance companies and at the same time permitted them to do almost anything an insurance company may do. If we were the New Mexico legislature, we would pay close heed to their formidable arguments. But as a court, we have no right to say that plaintiff is not a fraternal society when the legislature has said it is, nor deny to it powers which the legislature has granted.

The temporary injunction will be made permanent. Costs will be taxed against defendants.

---

[1] Not released by court at date of publication.
*Decree affirmed —— F.(2d) ——.