## ROYAL NEIGHBORS OF AMERICA v. STATE ex rel. READ, State Ins. Comm'r, et al.

No. 26694. Sept. 14, 1937.

Rehearing Denied Oct. 19, 1937.

Lendon A. Knight and Embry, Johnson, Crowe & Tolbert, for plaintiff in error.

John M. Wheeler and Creekmore Wallace, Special Counsel for the State of Oklahoma.

Mac Q. Williamson, Atty. Gen., and Randell S. Cobb, Asst. Atty. Gen., for defendant in error.

WELCH, J. This suit was instituted by counsel appointed or employed by the Governor, who commenced the suit in the name of the state on the relation of the Insurance Commissioner, as plaintiff, to collect from the defendant corporation a large sum of money claimed to be due the state as taxes on premiums collected by defendant in this state from 1908 to 1934. The defense was based on a number of grounds, among others, that the defendant was a fraternal beneficiary association; that the statute levying the tax on premiums of foreign insurance companies collected in

this state specifically exempts from its provisions such association, and that therefore defendant is not liable to pay such tax.

The trial court found for the plaintiff, and so rendered judgment, from which judgment the defendant prosecutes this appeal.

The defendant is a foreign corporation, organized in the nineteenth century under the laws of the state of Illinois, which is the state of its domicile, and where it has its principal office and place of business, as a fraternal beneficiary association or society. Prior to 1900 the defendant came into the Indian Territory and into Oklahoma Territory as a fraternal beneficiary association and transacted business as such.

Upon the advent of statehood the defendant continued to engage in such business, complying with the laws so authorizing it to do, and in each succeeding year being licensed to engage in such business by the Insurance Commissioner, after he had examined and passed upon the annual report. See chapter 51, art. 4, secs. 10564-10593, O. S. 1931.

The laws of Illinois governing the organization and operation of such association, and defining such an association or society, are in material effect identical with our own laws. See chapter 73, sec. 404, Smith-Hurd Illinois Annotated Statutes, and section 10564, O. S. 1931.

In both states such an association is required to be carried on for the benefit of its members and not for profit, to have a lodge system with ritualistic form of work, and representative form of government; and such association is authorized to make provision for payment of benefits in various cases and to create reserve or emergency funds and disburse and apply the same in accordance with its constitution and by-laws.

In this state such an association is required to make various reports, to designate the Insurance Commissioner as process service agent, to submit to examinations, to make certain showing as to its assessment rates, and to comply with various other requirements of article 4, chap. 51, secs. 10564-10593, O. S. 1931. Since the year 1919 such associations have to some extent been further supervised by the Fraternal Insurance Board then created by the Legislature. See sections 10588-10593, O. S. 1931. And specific penalties are provided in case of failure of such an association to comply with legal requirements as to the conduct of business.

Up to the present time the defendant has complied with these requirements of the law, and has regularly satisfied the Insurance Commissioner of its right to continue to operate as a fraternal beneficiary association, and has continued to do so.

However, the plaintiff contends that the business transacted by the defendant is so similar to the business transacted by regular or old line insurance companies in Oklahoma as to justify the classification of defendant as an "insurance company," as distinguished from a "fraternal beneficiary association," and to require defendant to pay the premium tax since statehood which is assessed against "insurance companies" pursuant to section 10478, O. S. 1931.

An examination of the record does disclose that in that portion of defendant's operations having to do with the providing for and payment of benefits to its certificate holders, there is similarity with the operations of regular or old line "insurance companies." When the defendant issues its beneficiary certificates providing for the collection of assessments and the payment of benefits, and thereafter collects assessments and pays the deserved benefits, the whole transaction is similar to the issuance by an "insurance company" of a policy and the collection of the stipulated premium and the payment of the stipulated sum to the insured or his beneficiary.

Likewise, there is similarity in the business practices by which the defendant preserves its solvency and its ability to pay the benefits provided by its beneficiary certificates.

However, we are unable to follow plaintiff's argument that such operations and such business practices have the effect of converting the defendant into an "insurance company" and destroying defendant's existence as a "fraternal beneficiary association" so as to render defendant liable for the taxes since statehood which are here sought to be collected.

It must be remembered that the defendant since statehood has here operated as a "fraternal beneficiary association" with the sanction of the state. It has always been the policy of the state to distinguish between "insurance companies" and "fraternal beneficiary associations." In our Constitution, article 19 was drafted dealing with insurance. Section 2 thereof provided that "until otherwise provided by law" foreign insurance companies should pay a substantial entrance fee and annual tax, but in the same section "fraternal insur-

ance companies" were specifically excepted. And in the next section it was provided:

"The revenue and tax provisions of this Constitution shall not include, but the state shall provide for, the following classes of insurance organizations not conducted for profit, and insuring only their own members:

"First, farm companies insuring farm property and products thereon; second, trades insurance companies insuring the property and interest of one line of business; third, fraternal life, health, and accident insurance in fraternal and civic orders, and in all of which the interests of the members of each respectively shall be uniform and mutual."

Our statute then provided expressly for "insurance companies" and for "fraternal beneficiary associations." The statutory definition of an "insurance company" specifically excluded "fraternal and benevolent orders and societies." (Section 10451, O. S. 1931.)

At statehood the Legislature adopted a definition of fraternal beneficiary associations, which with slight amendments is shown as section 10564, O. S. 1931, and in the next succeeding section it was provided that:

"All such associations coming within the description set forth in the preceding section, organized under the laws of this state, or the laws of any other state, province or territory, and doing business within this state, may continue such business provided they hereafter comply with the provisions of this article regulating annual reports to the insurance commissioner and the designation of the insurance commissioner as the person upon whom process may be served as hereinafter provided."

And there follows to section 10592, O. S. 1931, numerous provisions for the regulation of fraternal beneficiary associations, all entirely separate from the provisions in reference to "insurance companies."

It is the plaintiff's contention that by reason of the operations and business practices of the defendant, the defendant has at all times since statehood been and now is an "insurance company," and plaintiff points to the fact that the defendant maintains a reserve, pays substantial salaries to various officers and agents, issues different kinds of beneficiary certificates, and is authorized to issue and does issue certificates to minors who are not and cannot be members until they reach legal age. We find, however, that none of these activities are contrary to the statutory authority of the defendant as a fraternal beneficiary association. The defendant has done all things in this state required of it as a fraternal beneficiary association, and so far as this record is concerned has not done anything that it was not authorized to do as such an association. It seems clear that it has been the policy of this state to recognize this defendant as a fraternal beneficiary association throughout all the years of statehood and up to this time.

Public policy of the state is fixed by the acts of the Legislature upon subjects concerning which it has seen fit to speak. Mahaffay v. Smith (Mont.) 254 P. 875; Cruse v. Fischl (Mont.) 175 P. 878.

And as we have noticed, our Legislature has seen fit to deal at length with such associations. As to operations of associations such as the above, the Legislature could have changed the policy at any biennial session. If this defendant was not authorized to continue to operate as such an association, with the exemptions and benefits thereof, such adverse determination could have been made at any annual period by the Insurance Commissioner, and between the period of those reports the defendant could have been proceeded against for any improper operations by the Attorney General, as specifically provided by sections 10590 and 10591, O. S. 1931. But that does not fix liability on the defendant for the sum here sought to be recovered for back taxes.

A case involving similar principles was presented to a three-judge court in the United States District Court for the District of New Mexico, Modern Woodmen of America v. Don R. Casados, State Corporation Commissioner, 17 Fed. Supp. 763. It was said in the opinion, delivered by McDermott, Circuit Judge, as follows:

"If plaintiff is not or was not a fraternal benefit society, it should not have been licensed as such; if the Attorney General or other law enforcing agency believed that the order of the Superintendent of Insurance was infected with fraud or contrary to law, the remedy was seasonably to invoke the aid of the courts in an appropriate proceeding to set aside his order. It is neither fair nor proper to permit such orders to go unchallenged for many years, induce reliance upon them by such acquiescence, and then ask courts to disregard the orders to the end that taxes and penalties may now be assessed for the years gone by."

And further in the same opinion it was said:

"It is urged that, taking a broad view of plaintiff's business, it is an insurance company in fact; that its fraternal features serve only to enable it to take advantage of statutory exemptions accorded fraternals. The large amount of insurance on its books, the number of its agents, the salaries of its officers, are relied upon as proof. There is little doubt that, during the years, the situation has changed. At the outset, the insurance feature of these societies was a mere incident to fraternity; more and more, fraternity has become the incidental feature. But the Legislature has not put a limit on the amount of insurance a fraternal may write, or the number of its agents or officers, or the amount of their compensation. The courts cannot."

And further in that opinion it was said:

"It is then said that plaintiff is really operated for the benefit of its officers and agents, who draw respectable salaries and commissions. Doubtless the officers and agents are satisfied with the salaries and commissions the members vote them, or they would quit. But the fact that satisfactory salaries and commissions are paid for services rendered does not convert a mutual company into a corporation for profit. There is no evidence that the salaries and commissions paid are out of line with those ordinarily paid by other large companies for similar services, and they do not seem to be so. Approximately $13,-000,000 commissions were paid under one contract for rewriting hundreds of millions of insurance. That reduces to less than $20 a thousand for production cost, and there is no proof that such sum is extravagant. Defendants doubtless knew that insurance cannot be put on the books a policy at a time for less than such figure, or they would have undertaken to prove the amount unreasonable. The members, through their elective officers, authorized all payments. Such considerations as these do not bear upon the question of the nonprofit character of the plaintiff corporation. Courts cannot convert a mutual company into a corporation for profit because some officer or agent is paid more than he is worth."

And after dealing with the question of the maintaining of reserves, which was authorized by the New Mexico laws, as by our own, and finding nothing upon that point which would bear upon the merits of the case, it was said further in the same opinion:

"Many other similar complaints are made, for example, that the policies issued carry too heavy a loading for expense, that the per capita tax is unfair, etc. With those matters we have no concern. The injunction issued carefully protects the state officials in all their powers to protect policyholders; the injunction is narrowly limited to their efforts to collect a tax from which the Legislature exempted plaintiff."

And in the conclusion it was said in that opinion:

"Defendants' real complaint, as we see it, is that the Legislature has exempted fraternal societies from many of the burdens imposed upon insurance companies and at the same time permitted them to do almost anything an insurance company may do. If we were the New Mexico Legislature, we would pay close heed to their formidable arguments. But as a court, we have no right to say that plaintiff is not a fraternal society when the Legislature has said it is, nor deny to it powers which the Legislature has granted."

And in that case the collection of a tax similar to the tax here involved was prevented by injunction.

It is readily apparent that if recovery is allowed in this case the state will be permitted to do a serious injustice to the present membership of the defendant association, as they would be required to pay taxes and discharge burdens which would have been placed upon members who during the past quarter of a century received beneficiary certificates and collected benefits thereunder from the association at a time when the state without question recognized the right of such certificate holders to operate without bearing such burdens.

Similar questions to those involved here were considered by a three-judge court of the United States District Court for the Southern District of Iowa, Central Division, in Sovereign Camp of the Woodmen of the World, a Fraternal Beneficiary Association, Corporation, v. Ray Murphy, Commissioner of Insurance of the State of Iowa, 17 Fed. Supp. 650. That was a suit to enjoin the Commissioner of Insurance of Iowa, among other things, from attempting to collect the tax, required by the statute of that state, of foreign insurance companies based upon a percentage of the premiums received from their insurance business done in the state, but which statute, like our own, exempts fraternal beneficiary associations. The court denied a motion to dismiss and granted a temporary injunction as prayed. This well-considered opinion answers many, if not all, of the contentions made by plaintiff in this case. It was there said:

"We are satisfied that the contracts shown to have been issued in Iowa were drawn in the honest belief that they were authorized by the Iowa statute and that they contain no options which were expressly pro-

hibited. They come generally within the broad provisions for 'extended benefits,' 'paid up benefits' and 'withdrawal equities' mentioned in the Iowa statutes and their issuance did not deprive the plaintiff of its fraternal character."

Again, it is said in that opinion:

"The testimony presented for defendants convinces that many of the reasons which originally justified exempting fraternals from taxation no longer apply to such great financial institutions as the plaintiff has grown to be. But such considerations are for the Legislature. The Legislature has sanctioned the changes in the methods of the fraternals which have made their growth possible, but has kept intact and without change their classifications as exempt corporations."

The record in the case at bar shows that the defendant, for all of the purposes material in this action, is a fraternal beneficiary association with a lodge system, with ritualistic form of work, and representative form of government, and has up to this time complied with the requirements of the law entitling it to so operate, with exemptions from payments of the tax herein sought to be collected, which tax by section 10478, O. S. 1931, is specifically levied against "insurance companies," as distinguished from "fraternal beneficiary associations."

Similar suits to collect back taxes were instituted in the state of Arkansas, where it was held by the Supreme Court of that state that the companies involved were not liable, and our conclusion here is in accord with the decision of that court. See Modern Woodmen of America v. State ex rel. Attorney General, 103 S. W. (2d) 38; Woman's Benefit Association v. State ex rel. Attorney General, 103 S. W. (2d) 46, and The Maccabees v. State ex rel. Attorney General, 103 S. W. (2d) 46.

The plaintiff urges that the defendant has issued a certificate or certificates which it was not authorized to issue as a fraternal beneficiary association. But if that be true, we are unable to follow plaintiff's argument that the defendant by such act of its officers would be destroyed as a fraternal beneficiary association and thereby changed into an "insurance company" for all purposes. This court held the contrary in effect in Supreme Forest Woodmen Circle v. Stella Bowen, 180 Okla. 534, 71 P. (2d) 480, and Sovereign Camp of the Woodmen of the World v. Edwards, 180 Okla. 528, 71 P. (2d) 484. In those opinions there is also further discussion as to requirements of mutuality, maintenance of reserve, and non-profit operation, which is interesting as applied to the facts in this case. And our conclusions here are in line with that discussion in those cases.

Our attention is directed to the former decisions of this court in Modern Order of Praetorians v. Bloom, 69 Okla. 219, 171 P. 917. That case was discussed and that opinion in part disapproved in Supreme Forest Woodmen Circle v. Bowen, supra, and we here expressly approve those statements in the opinion in the Bowen Case.

In the case at bar the defendant questions the right of plaintiff to commence and maintain this action in this form and for this recovery of tax. It is not necessary that we pass on that question, and we do not do so, since upon the merits the defendant is not liable for the recovery sought.

The judgment of the trial court is reversed, and the cause remanded, with directions to dismiss.

BAYLESS, V. C. J., and PHELPS, CORN, GIBSON, HURST, and DAVISON, JJ., concur. OSBORN, C. J., dissents. RILEY, J., not participating.