**96 P.2d 705**

**STATE ex rel. BIEL, Superintendent of Insurance, v. ROYAL NEIGHBORS OF AMERICA et al.**

Nos. 4406, 4419–4421, 4438, 4441.

Supreme Court of New Mexico.

Nov. 20, 1939.

Frank H. Patton, Atty. Gen., and C. R. McIntosh, Sp. Asst. Atty. Gen., for appellant.

Wilson & Watson, J. O. Seth, Gilbert & Hamilton, and Mariot H. Murphy, all of Santa Fe, and Rainey T. Wells and Earl R. Stiles, both of Omaha, Neb., Lendon A. Knight, of Rock Island, Ill., and Flansburg, Lee & Sheldahl and Charles H. Flansburg, all of Lincoln, Neb., for appellees.

MABRY, Justice.

The State, ex rel. the Superintendent of Insurance, brought suit against a number of defendants organized as fraternal benefit corporations or societies in foreign states, and which theretofore and over a period of years licensed in this state as Fraternal Benefit Societies, to recover the statutory 2% upon the premiums collected over a long period of years. The claim is made that the defendant societies were doing business in this state of a character similar to that authorized to be done only by old line life insurance companies, and

that they are in fact insurance companies. The state by these suits attempts to recover this statutory 2% tax over a period of time extending from about 1910 in most cases until 1936.

Identical questions of law are presented in the six cases here upon appeal and these are consolidated for the purpose of argument and disposition by this court.

Demurrers were filed in all cases challenging the sufficiency of the complaints, and the points raised by the demurrers may be reduced to three fundamental propositions: (a) That defendant orders or societies are not old line insurance companies, are not licensed as such and therefore are not subject to the 2% premium tax sought to be recovered; (b) that the status of the defendants as fraternal benefit societies, as distinguished from old line insurance companies, became fixed and determined each year when they were licensed and authorized by the Superintendent of Insurance to do business in this state, and that such status is therefore res adjudicata upon this collateral attack; (c) that the statutes under which the tax is sought to be recovered are, in any event, unconstitutional in that they violate the equal protection clause of the 14th amendment to the Federal Constitution, U.S.C.A., and Section 18 of Article 11 of the New Mexico Constitution.

As counsel for plaintiff and appellant suggests, points (a) and (b) may be discussed and considered as one question.

Litigation of this character is not new; identical and kindred questions have been raised and decided in numerous suits throughout the country and we are therefore afforded a number of precedents for our guide.

It is important to decide first, whether the status of defendant societies has been so fixed by the findings and determinations of the Superintendent of Insurance, who, from year to year licensed each of them as fraternal benefit societies, so that their status may not now be collaterally attacked as here attempted.

Counsel seem in agreement upon the question that unless the character of business engaged in, as distinguished from the character of business authorized by its charter and by the license granted by the state authority, may be inquired into in these suits, no relief can be afforded plaintiff. Defendant societies do not concede that such inquiry would afford the plaintiff comfort in any event. All claim they were at all times mentioned operating within the limits of their authority as fraternal benefit societies, but contend that whether they were so operating does not become important here; that the question presented is a much narrower one, viz.: "Can the state authorize and license these corporations as fraternal societies from year to year as has here been done under authority granted the Superintendent of Insurance, and thereafter, by such suits as these seek to show lack of qualification, or performance

outside of and beyond the scope of their charter or license authorization, and thus mulct them of their resources by tax and penalty as here sought to be imposed?"

Prior to 1921, although fraternal benefit societies were exempted from the general insurance code, there was no statutory definition of such societies, and defendants claim that their incorporation and charter in the states of their domicile as fraternals, as distinguished from old line insurance companies, is conclusive of their character as such.

The statute levying the 2% tax now sought to be imposed upon defendants (originally Chapter 48, Laws 1909), specified that it should be paid by "every insurance company doing business in this State," Code 1915, § 2810, and carried the following provision of exemption: "The provisions of this chapter shall not be construed so as to prevent any fraternal, religious or benevolent society from issuing indemnity to anyone against loss by death or accident of any of its members, and such society shall not be held amenable under or governed by any of the provisions of any article pertaining to accident or life insurance, except as to rendering an annual statement of the condition of such association or society. * * *" Code 1915, § 2823.

Chapter 197 of the session laws of 1921 (Sec. 71-301 to 332, N.M.Comp.Laws, 1929) gives us our first statutory definition of fraternal benefit societies. This is a general code for license and control of fra-

ternal benefit societies, and, among other things, defines such societies as: "Any corporation, society, order or voluntary association, without capital stock, organized and carried on solely for the mutual benefit of its members and their beneficiaries, and not for profit, and having a lodge system with ritualistic form of work and representative form of government, and which shall make provision for the payment of benefits in accordance with section 5 (71-305 [N.M.Comp.Laws, 1929]), is hereby declared to be a fraternal society."

This act has a further provision exempting such societies as therein defined to be fraternal benefit societies "from all provisions of the insurance laws of this state, not only in governmental relations with the state, but for every other purpose * * *."

Defendants contend that under the foregoing exemption statute every defendant is exempt, and if *in fact* they are organized and licensed as such, which the complaint itself concedes, the inquiry need go no further; that there are other means and methods of attacking a corporation or society, foreign or domestic, which exceeds its authority and performs ultra vires acts, but that this must be upon direct attack and not collaterally and under the circumstances here presented.

Comity requires that this state recognize as such, a corporation, company or society which is chartered and recognized in the state of its creation as a

fraternal benefit society, if it is to be admitted and licensed at all under our fraternal society code. See Sovereign Camp, W. O. W. v. Bolin, 305 U.S. 66, 59 S.Ct. 35, 83 L.Ed. 45, 119 A.L.R. 478. We can in the first instance refuse to admit or license such foreign corporations or societies. But, we cannot admit them, license them as organizations exempt from the general provisions of the law relating to old line insurance companies, and thereafter convert them into such insurance companies by the simple expedient of determining that such societies have written non-allowable classes of policies and are otherwise doing business as insurance companies, and thus subject them to this tax and penalty which the law lays only upon companies licensed as old line insurance companies. See Modern Woodmen of America v. Casados, D.C., 17 F.Supp. 763, hereinafter referred to more fully; Royal Neighbors of America v. State, 181 Okl. 63, 72 P.2d 325.

Plaintiff relies upon the case of Modern Order of Praetorians v. Bloom, 69 Okl. 219, 171 P. 917. This decision at the time and for some years thereafter, did arouse some concern in both the general insurance, as well as the fraternal, field of endeavor, notwithstanding it was at the time espousing a minority and, it seems to us, an unsound view of the characteristics and rights of such societies.

This case was clearly distinguished and departed from in subsequent decisions of the Oklahoma court which held, in conformity with defendants' contention here, that the nature of the business authorized to be done and for which it was licensed, as distinguished from the character of business it might actually do, would determine the nature and character of such societies and organizations. Royal Neighbors of America v. State, 181 Okl. 63, 72 P.2d 325; Supreme Forest Woodmen Circle v. Bowen, 180 Okl. 534, 71 P.2d 480; Sovereign Camp, W. O. W. v. Edwards, 180 Okl. 528, 71 P.2d 484.

The same view has been expressed by the courts of other states and by late Federal court decisions where like questions have been presented; and generally the earlier Oklahoma decision has been cited with disapproval. See Modern Woodmen of America v. State, 193 Ark. 458, 103 S. W.2d 38, 43; Sovereign Camp, W. O. W. v. Murphy, Commissioner of Insurance of the State of Iowa et al., D.C., 17 F.Supp. 650, a three judge U. S. District court case, the opinion written by Circuit Judge Woodrough.

In addition we have the recent case of Modern Woodmen of America v. Casados, etc., 17 F.Supp. 763, 766, decided by a three judge court in the U. S. District court for the district of New Mexico. This case arose from circumstances identical with those now before us and the questions were decided adversely to the contention of plaintiff. That court, in an able opinion written by Circuit Judge McDermott of the United States Court of Appeals of the 10th circuit, sitting with Judge

Phillips, also of the Circuit court, and Judge Neblett of the United States District court for the district of New Mexico, enjoined the state of New Mexico and its Superintendent of Insurance from the collection of this 2% tax, and the penalties like those here sought to be imposed and collected.

In that opinion Judge McDermott points out that the status of these fraternal societies heretofore admitted to do business in this state stands as conclusively adjudicated and cannot be inquired into in a proceeding collaterally attacking it in an effort to collect such premium tax. He says:

"Each year since 1908 it has presented to the state official authorized by the legislature to determine the question, its application to be licensed as a fraternal society. That official must determine whether it meets the statutory requirements as a fraternal society, or whether it is an insurance company. If it is one, its fees are nominal; if the other, they are substantial; certain capital requirements are made of one and not the other. Each year, the state official had, or could procure, copies of by-laws, policies issued, financial statements, or such other information as he needed. Each year plaintiff was determined to be a fraternal society and licensed as such. No one throughout the years has challenged such determination. No direct attack has ever been made on any such orders of the Superintendent of Insurance. The attack here is purely collateral. What the present head of the insurance department alleges is simply that the determinations of his predecessors were erroneous, and asks this court to disregard them. This we cannot do. Where a statute reposes the decision of a question of fact in an administrative officer or body, his decision thereon, unless set aside by a court of competent jurisdiction in an appropriate proceeding, is binding on the courts in subsequent litigation. Familiar instances are the assessment of property for taxation, or the determination of a reasonable rate for utilities; decisions of such bodies may be set aside if directly and seasonably attacked and sufficient reasons exist; but when not so attacked, they are binding.

"Determinations of such administrative officers are generally spoken of as adjudications. Whether the term is accurate is not material; administrative officers are not judges, but in determining fact questions and entering orders based thereon, they perform judicial functions. The label is unimportant; the fact remains that such determinations are binding because the legislature has reposed in such officials the power to determine such facts, and orders based thereon are conclusive until they are set aside or reversed in appropriate proceedings. They are not open to collateral attacks. Apt statements of this rule and the basis therefor may be found in the decisions of the Supreme Court of the United States and the Supreme Court of New Mexico.".

See Freeman on Judgments, 5th Ed., Sec. 397, 633; City of Socorro v. Cook, 24 N.M. 202, 173 P. 682; Van Patten v. Boyd, 20 N.M. 250, 150 P. 917; Chicago B. & Q. Ry. Co. v. Babcock, 204 U.S. 585, 27 S.Ct. 326, 51 L.Ed. 636; 34 C.J. "Judgments", Sec. 1287.

These defendant corporations or societies were each chartered in a foreign state as fraternal benefit societies and were and are exempt from the operation of the insurance laws of their respective states. We admitted them to New Mexico as fraternals and not as "insurance companies," and we took notice, necessarily, of the character of their charters. This goes to the question of whether defendants as organized, substantially came within the legislative definition of fraternal benefit societies. Such Corporation carries its charter wherever it goes, and those dealing with it are bound to take notice of the provisions thereof. Sovereign Camp, W. O. W. v. Bolin, 305 U.S. 66, 59 S.Ct. 35, 83 L.Ed. 45, 119 A.L.R. 478.

We need not inquire into the practice of defendant societies and organizations or concern ourselves with the matter of whether in fact, by some practices, they do violate the letter or the spirit of the New Mexico fraternal code. We would point out, as was observed in Modern Woodmen of America v. Casados, supra, that our statutes lay the tax of 2% not upon the insurance *policies,* but upon insurance *companies.* The statute (Sec. 2, c. 194, Laws 1921) provides that "every insurance company * * * transacting business in this State, except domestic, mutual, co-operative or assessment associations, * * * shall pay" such tax. This language is found in the insurance code, enacted at the same session at which there was enacted the fraternal code.

In the fraternal code (Sec. 71-331, N.M. Comp.Laws of 1929) it is provided: "Every fraternal benefit society organized or licensed under this act is hereby declared to be a charitable and benevolent institution, and all of its funds shall be exempt from all and every state, county, district, municipal and school tax, other than taxes on real estate and office equipment."

Thus we see that the tax is imposed upon insurance companies "transacting business in this state" and the exemption applies to every fraternal benefit society "organized or licensed" under the fraternal act. The statute taxes those *licensed* as insurance companies and exempts all organizations *licensed* as fraternal benefit societies.

It is clear that when defendants have been regularly licensed as fraternal benefit societies, their status has been irrevocably established for the purpose of taxation. The determination by the Superintendent of Insurance each year that such societies are to have their licenses issued or renewed is conclusive upon the taxing authorities, and all others, that such societies for the years in question have been authoritatively defined by the agency designated by law for the task, and thus be-

long to a group defined by law to be fraternals. They are, therefore, exempt by law from the 2% tax imposed upon insurance companies. This determination becomes res adjudicata and cannot be collaterally attacked.

Ultra vires acts cannot change the nature of defendant societies or enlarge their powers. They are simply not members of that class of insurance companies or societies that are subject to the tax in question and are therefore exempt. Lutheran Mutual Aid Society v. Murphy, 223 Iowa 1151, 274 N.W. 907.

■ Some point is made by plaintiff of the fact that Sec. 15, Chap. 105, Laws of 1931 provides that a duly certified copy or duplicate of the license annually to be issued is made only prima facie evidence that the licensee is a fraternal benefit society within the meaning of the act, suggesting that this language excludes the idea or principle of res adjudicata. Counsel for the state urges that the statute being thus unambiguous the courts will not rely upon previous administrative construction which is plainly erroneous and amounts merely to a failure to enforce the law.

We are not intrigued by this argument. It is at once perceived by a reading of the statute that the provision is intended merely to give force to a *certified copy* or *duplicate,* when it may be necessary to prove the society's status. The *license* itself is not made prima facie evidence nor is the *act of the superintendent* thus made

inconclusive. There is no merit to the point.

■ It may be that the line of demarcation between the character of policy written by the old line insurance companies and fraternal benefit societies has become less distinct as the years have passed and the business of insuring the lives of its members has become the major purpose of, and largely the justification for, the existence of fraternal benefit societies. It may be true that the state, by legislation that sets these defendants apart from the field of insurance companies generally, has failed to sense what plaintiff so ably urges to be a fact, viz., that such societies no longer substantially perform functions of genuine fraternal societies; that they are not organizations with subordinate lodges where are taught and exemplified lessons of fraternal brotherhood, charity, morality, good citizenship and other kindred subjects. It may be true that to-day less attention is given to the ritualistic and fraternalistic work espoused by the lodge and more to the solicitation of insurance among the membership; and yet, admission of these facts would still not favor a different status for defendants.

Paraphrasing somewhat the language used by the Arkansas court in the case of Modern Woodmen of America v. State, supra: "It may be true that these societies have in a large measure departed from their original purpose of much fraternalism and small benefits for that of small fraternalism and large benefits, and that

they have taken on many of the characteristics of old line insurance companies." "But, it has substantially complied with the statutes of this state," the court went on to say, "and, whether it may continue to operate as a fraternal beneficiary society in this state presents a question addressed to the general assembly and not to us."

The legislature has provided for admission into this state and license for such fraternal benefit societies. The definition we accept did not always have legislative sanction; but, regardless of that fact, both before and after the enactment of the fraternal code of 1921, the determination of the status of defendants by the Superintendent of Insurance, the one agency legally authorized by statute to make such determination, became final. Any question as to the wisdom of setting up by legislation the distinction thus made is not for the courts.

Other points raised, including the one that our statute imposing this 2% tax and the penalties only upon foreign insurance companies is unconstitutional, need not be decided in view of our disposition of the point we have fully discussed and which calls for an affirmance of the judgment of the trial court.

There being no error, the judgment will be affirmed, and it is so ordered.

BICKLEY, C. J., and BRICE, ZINN, and SADLER, JJ., concur.