**In the Matter of Pauline (NMI) PERKINS, Debtor.**

**Bankruptcy No. 3–80–01275.**

United States Bankruptcy Court, S. D. Ohio, W. D.

March 16, 1981.

---

**3.** Deuteronomy, Ch. 15 v. 1 & 2.

Joseph C. Brucker, Springfield, Ohio, for debtor.

James R. Warren, Springfield, Ohio, Trustee.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

### PRLIMINARY PROCEDURE

Pauline Perkins filed a voluntary petition in bankruptcy on 7 May 1980. Among assets scheduled was a life insurance policy (No. 97253) on her life with Commonwealth Life Insurance Company, naming as beneficiary her ex-husband and a policy (Certificate No. 5000160) on her life with Modern Woodmen of America, also naming as beneficiary her ex-husband. These policies were claimed as exempt pursuant to the Ohio Revised Code Sections 2329.66(A)(6)(b) and 2329.66(A)(6)(d).

On 30 June 1980 James R. Warren, the Trustee in Bankruptcy, filed an objection to these claimed exemptions. On 11 July 1980, the Debtor filed an amended claim of exemption for the policies, adding Ohio Revised Code Sections 3921.18 and 3911.10; and, a motion to strike Trustee's objections, which was set for hearing on 15 August 1980.

On 14 July 1980, the Trustee filed an objection to the amended claims of exemptions.

### FINDINGS OF FACT

The total cash surrender value of both policies in question is in the total amount of $1,170.41 and the named beneficiary was never changed after the divorce of the Debtor.

The life insurance contract (certificate of insurance) with Modern Woodmen was purchased in the same fashion as the Commonwealth policy; namely, on solicitation of insurance agents. At the time of the purchase of the Modern Woodmen policy, the Debtor was never made aware of being a member of any society. Furthermore, she has never participated in any lodge system activities, or ever knew that any ritualistic society even exists. She merely paid her premium charges when due and considered her life insurance in effect as such. The fact that she automatically became a member of a society by purchasing insurance was never brought to her attention.

According to the Debtor, she never heard of or participated in any type of initiation or any ceremony after dealing with the

insurance agent for the purpose of purchasing life insurance. She has never been contacted by or in contact with, any officials or members of any fraternal society.

The policy was physically enclosed in a storage envelope provided by the insurer, with logo and printed virtues recited thereon, such as "Modern Woodmen of America, Rock Island, Illinois ... since 1883 Life Insurance for the entire family;" and "Modern Woodmen of America is named, controlled and operated by and for its members. Patronize it when your needs for life insurance change;" and, "your life insurance contract is valuable property and was purchased to cover the following: Clean up fund—readjustment income—mortgage cancellation—retirement income—education—family security—juvenile insurance—savings."

The documentary evidence, nevertheless, reflects a fraternal society image and format. Modern Woodmen was authorized by the State of Ohio Department of Insurance "to transact in this State, in accordance with the laws thereof ... the business of Fraternal Insurance as prescribed in the statutes of the State of Ohio."

The 1978 Revision of By-Laws provides, *inter alia*, that the principal office of Modern Woodmen of America shall be at the city and county of Rock Island, Illinois, and, as follows:

"Sec. 2, NATURE, PURPOSES AND OBJECTIVES"—This Society is a fraternal benefit society incorporated under the laws of the State of Illinois. It is the objective and purpose of the Society to bring together persons of exemplary habits and good moral character into a fraternal benefit society and thereby to provide for the social, intellectual, moral, and physical improvement of its members; to promote fraternal relationships and foster acts of fraternity, charity, and benevolence by and among its members; to encourage and strengthen the concept of the conventional and traditional family unit to assist its members in living in harmony with their environment; and to provide death, disability, annuity, and other benefits, rights and privileges of its members and their beneficiaries as authorized by these By-Laws and in accordance with the laws of Illinois pertaining to fraternal benefit societies.

The By-Laws contemplate and establish two categories of membership. One category is for "Beneficial members" of "qualified age who have furnished acceptable evidence of insurability." The other category is "Social members" of qualified age who are not Beneficial Members but who support the general objectives and purposes of the Society and desire to become members of a local Camp and pay the required dues ..."

The Articles of Incorporation specifies, as follows:

"3. This corporation is a fraternal benefit society, without capital stock, organized and carried on for the sole benefit of its members and their beneficiaries and not for profit, having a lodge system with ritualistic form of work and representative form of government. The purpose of the Society shall be to encourage and foster acts of fraternity by and to promote fraternal relationships among its members and to provide death, disability and other benefits, rights and privileges as authorized by its By-Laws and in accordance with the laws of Illinois. It may create, maintain, and disburse funds in accordance with its By-Laws and the laws of Illinois. The payment of benefit in all cases, shall be subject to compliance by the member with the contract, rules and laws of the Society.

"4. The plan which shall be followed in carrying out the purpose of this Society is as follows, to wit: By the organization of local Camps and a National Convention as defined in the By-Laws. The local Camps shall have stated meetings at least once a month, and the National Convention shall meet at least once in four calendar years. The National Convention shall be the legislative and governing body of the Society, having jurisdiction over all subordinate Camps and officers and members of the Society. It shall be the judge of the election and qualification of

its own members. It shall possess the power to do and perform any and all acts and things by it deemed essential to the welfare and perpetuity of the Society and in conformity with the laws of the State of Illinois. The Society shall have the power to acquire, hold and convey such real and personal property as shall be requisite for the convenience accommodation of the transaction of its business and such as may come into its possession by reason of its investments or in satisfaction of indebtedness. The Society may create, maintain, and operate for the benefit of its sick, disabled, aged, or distressed members and their families and dependents, hospitals, asylums, homes or sanatoriums, and for such purpose may own, hold or lease personal property and real property located within or without the State of Illinois, with necessary buildings thereon."

The documentary evidence adduced was obtained from Modern Woodmen, after the Trustee's objection, and no such material as the By-Laws and purposes of the organization had ever been seen by the Debtor prior to that time. The Debtor, upon being examined by the Trustee at the first meeting of creditors testified she was not a member of the society.

The certificate of life insurance issued to Pauline Perkins, however, is a typical "legal reserve basis" life insurance contract and in no manner confers any social or other benefits, as recited by the By-Laws. If the insured does not pay her premiums, she then is no longer a "member".

## CONCLUSIONS OF LAW

In analyzing the questions of law, it must initially be observed that the question of whether Modern Woodmen of America is legally operating in the State of Ohio as a fraternal benefit society is not a viable is-

sue. By comparing the wording of Ohio Revised Code Section 3921.01 to the Articles of Incorporation, we note very meticulous use of the same semantics. It is obvious that the incorporators were acutely aware of statutory requirements.[1] The thrust of the Trustee's position in this regard need not be explored in detail because of evidence to the contrary, and can be dismissed.

The issue raised of whether or not the life insurance policy ("One-Parent Family Certificate") is exempt cannot be dismissed so readily. This question is fundamentally to be resolved as an interpretation of the Ohio exemption statutes and the rights of the Debtor and her creditors in an insolvency context, without regard to the insurer, (which supplied the documentary evidence without becoming a party to the litigation).

The primary authority upon which Debtor relies is a case precedent under Minnesota law. *In the Matter of Heideman*, (1975) 5 C.B.C. 518, 1 B.C.D. 1157. This well reasoned decision is worthy of note, even though rendered before adoption of the current Ohio exemption statutes (enacted in haste, to "opt out" of the 1978 Bankruptcy Code federal exemptions) because of at least superficial resemblance to the Ohio statutes pertaining to fraternal benefit societies and an apparent uniformity evolved in such state statutes nationally.

The case precedents relied upon in *Heideman* place great emphasis upon "the worthy and benevolent design made so prominent in organizations of this character, realizing that the fund accumulated by assessment upon the living was for the relief and assistance of the families of deceased members, not for the benefit of creditors . . ."

There can be little doubt that the underlying, basic purpose of fraternal benefit societies is as worthy of protection today as in the late nineteenth century. Such ration-

---

1. "§ 3921.01—Definitions.

Any incorporated society, order, or supreme lodge without capital stock, including one exempted under the provisions of division (b) of Section 3921.42 of the Revised Code whether incorporated or not, conducted solely for the benefit of its members and their beneficiaries and not for profit, operated on a lodge system with ritualistic form of work, having a representative form of government, and which makes provision for the payment of benefits in accordance with Chapter 3921. of the Revised Code, is hereby declared to be a fraternal benefit society." O.R.C. § 3921.01.

ale, nevertheless, begs the question *instanter* as to life insurance exemptions, a province in Ohio of state law. Unfortunately, no Ohio case precedents interpreting the exemption status of such life insurance contracts has been cited.[2]

■ To balance all of the equities appertaining to bankruptcy administration and the conflict resolution among disparate interests, a court must employ a functional approach as a juridical factor. Looking to the Ohio exemption statute, as amended to opt out under 11 U.S.C. § 522(b)(1),[3] O.R.C. § 2329.66(A)(6)(a) exempts "The person's interest in a beneficiary fund set apart appropriated, or paid *by* a benevolent association or society, as exempted by Section 2329.63 of the Revised Code." (Emphasis here is directed to the preposition underlined).

Under Section 2329.66(A)(6)(b) is exempted, "The person's interest in contracts of life or endowment insurance or annuities, as exempted by Section 3911.10 of the Revised Code." Under Section 2329.66(A)(6)(d) is exempted, "The person's interest in *money, benefits, charity, relief, or aid to be paid, provided, or rendered by a fraternal benefit society*, as exempted by Section 3921.18 of the Revised Code." (emphasis added).

Chapter 3921. pertaining to Fraternal Benefit Societies is an integral part of Title 39 of the Ohio Revised Code governing and regulating the insurance industry in Ohio, and establishing a Department of Insurance under the Superintendent of Insurance as chief executive officer and director of the department.

Under the provision of Ohio Revised Code Section 3921.19, "*No money or other benefit, charity, relief, or aid to be paid, provided or rendered* by any [fraternal benefit] society, is liable to attachment, garnishment, or other process, or to be seized,

taken, appropriated, or applied by any legal or equitable process or operation of law to pay any debt or liability of a member or beneficiary, or any other person who may have a right, *either before or after payment by the society*." (emphasis added).

Looking to the exemptions in Ohio pertaining to life or endowment insurance (O.R.C. Section 2329.66(A)(6)(b)), the statute incorporates by reference Section 3911.10 from the insurance chapter of the Ohio Revised Code, which exempts all contracts of life insurance which have been taken out for the benefit of "the spouse, or children, or any relative dependent upon such person . . ."

■ Focusing the issue, therefore, the question posed is whether the life insurance exemption status of the contract with Modern Woodmen should be treated as "benefit, charity, relief, or aid to be paid, provided or rendered by any society"; or, is it treated as any other life insurance policy? If considered in the nature of any other life insurance policy, it is not exempt because the beneficiary is not a suitable nuclear family member or dependent.

The solution depends upon the analysis of the exact statutory terms of the respective exemptions. Even though a fraternal benefit society, Modern Woodmen's business of writing life insurance is amenable to the economic and legal constrictures imposed for the protection of the public by the Ohio Department of Insurance, and in competition within the industry as such a business. There is no functional purpose in either rationalizing that creditors' rights should be treated differently to this generic type of asset; or, that holders of life insurance policies issued by different business organizations should be denied equal protection of the law. Hence, it is unnecessary to exam-

---

**2.** (Parenthetically, it is noted that the question of the exemption status of life insurance policies issued from commercial sales of life insurance by agents of ostensible fraternal benefit societies has not been addressed in any case precedents discovered by research by this Court. The case precedents have all at least tacitly understood or assumed that the life in-

surance was issued by a fraternal society actually functioning as such. In this regard, we do not purport to draw any conclusions as to the operation of the Modern Woodmen of America in states other than Ohio).

**3.** *See* O.R.C. § 2329.662, effective 9/28/79.

ine the constitutional validity of the Ohio exemption statutes in this regard.

Furthermore, treating life insurance contracts as a separate business, even though sold by a licensed fraternal benefit society, in no fashion detracts from the fundamental purpose of such organizations. The statutes are neither constitutionally questionable nor inconsistent when considered *in pari materia.* Ohio Revised Code Section 3921.18 does not refer to insurance policy cash values and no purpose can be served to read such into the statute and thereby render this section in conflict with Section 3911.10, the insurance exemption. The "benefit, charity, relief, or aid to be paid, provided or rendered by any society" does not and should not contemplate commercial life insurance policies.

In fact, the articles of incorporation, by-laws, and the manner of doing life insurance business by Modern Woodmen in Ohio bear out this very obvious differentiation. The Debtor was sold a policy by a commercial agent; no mention was even broached about any fraternal society; the by-laws distinguish between "beneficial numbers" and "social members"; and the Debtor herself testified that she did not consider herself as a member of any such society. Even more elucidating is the absence of any evidence whatever that Modern Woodmen in the State of Ohio in any degree conforms to the Ohio statutory description of a society "operated on a lodge system with ritualistic form of work."

In final analysis, it must be concluded that the character and attributes of the property claimed exempt from execution is the determinative factor, rather than the character and attributes of the merchant.

As to the operation of the affairs of Modern Woodmen of America in other states, we concur with the pronouncement of the United States District Court for the District of New Mexico in *Modern Woodmen of America v. Casados,* (1937) 17 F.Supp. 763, at page 767, as follows:

"It is urged that, taking a broad view of plaintiff's business, it is an insurance company in fact; that its fraternal features serve only to enable it to take advantage of statutory exemptions accorded fraternals [from insurance company taxation]. The large amount of insurance on its books, the number of its agents, the salaries of its officers, are relied upon as proof. There is little doubt that, during the years, the situation has changed. At the outset, the insurance feature of these societies were a mere incident to fraternity; more and more, fraternity has become the incidental feature. But the legislature has not put a limit on the amount of insurance a fraternal may write, or the number of its agents or officers, or the amount of their composition. The courts cannot ... It is then said that plaintiff is really operated for the benefit of its officers and agents, who draw respectable salaries and commissions. Doubtless the officers and agents are satisfied with the salaries ...."

The litigation *instanter* is between the debtor and her creditors as to the cash surrender value of the life insurance. The legality of the business of Modern Woodmen is not at issue, being determined by the Ohio Department of Insurance. The statutes of Ohio, as to exempt property, do not when closely analyzed, distinguish between insurance policies issued by Modern Woodmen and those issued by any other life insurance company. Life insurance is not a "benefit, charity, relief or aid to be paid, provided, or rendered by any society." As the decision by the Supreme Court of Ohio illustrates, the life insurance business of such fraternal benefit societies, which operate on a level premium basis, is only a thin, technical thread from the business operations of a mutual life insurance company, other than name only. *See Security Benefit Life Ins. Co. v. Robinson, Superintendent of Insurance,* (1959) 170 Ohio St. 217, 163 N.E.2d 352.

Referring to the character of the asset, therefore, we note that the cash surrender value of the policy is the property at issue. Conformably to the decision of this court in *Butz, Trustee v. Blue* (1980) 5 B.R. 723

(Bkrtcy., D. Ohio), and *In re Howard* (1980) 6 B.R. 220, 6 B.C.D. 1011 (Bkrtcy., D. Ohio), the Debtor may claim exemptions in the cash surrender value of both policies pursuant to Ohio Revised Code Section 2329.-66(A)(17), totalling the amount of $800.00.

It has also been the policy of this court to permit a Trustee to accept the loan value of a policy, as substantially equivalent to the cash surrender value, thereby to enable a debtor who may currently be uninsurable to retain existing life insurance coverage.

Accordingly, it is *ORDERED, ADJUDGED AND DECREED* that the objections to the claimed exemption filed by the Trustee in Bankruptcy, is hereby sustained.

*ORDERED*, that an alternative exemption be allowed to Debtor in both policies of life insurance pursuant to Ohio Revised Code Section 2329.66(A)(17), totalling the amount of $800.00.